[Civil No. 1175. Filed March 27, 1911.]

[114 Pac. 962.]

R. A. AITON, Petitioner and Appellant, v. THE BOARD OF MEDICAL EXAMINERS OF ARIZONA, Respondent and Appellee.

1. PHYSICIANS AND SURGEONS—REGULATIONS.—The state in its exercise of the police power may prescribe the qualifications of physicians and may commit to a board the power to revoke the license of any who become disqualified either morally or intellectually.

2. SAME—STATUTORY PROVISIONS—"UNPROFESSIONAL CONDUCT."—The fact that the term "professional conduct" is not defined by Laws of 1903, No. 59, section 7, authorizing the revocation of a physician's license for "grossly immoral or unprofessional conduct rendering him unfit to practice," does not render the statute void for uncertainty, as the term must be construed to mean that which is by general opinion considered to be grossly unprofessional because immoral or dishonorable.

APPEAL from a judgment of the District Court for the Fourth Judicial District, in and for Maricopa County. Edward Kent, Judge. Affirmed.

See, also, *ante,* p. 74, 108 Pac. 221.

STATEMENT BY COURT.

In June, 1893, the Board of Medical Examiners of Arizona issued a license authorizing appellant to practice medicine in this territory. In December, 1908, an affidavit was filed with the board, charging appellant with having been guilty, since the license was issued to him, of unprofessional conduct render-

ing him unfit to practice medicine in the territory, in that he willfully and knowingly published in a newspaper an advertisement of remarkable cures claimed to have been accomplished by means of certain mineral waters and preparations used and controlled by him, and claiming that such waters and preparations would cure incipient tuberculosis, systemic catarrh, and catarrh of the head, Bright's disease, diabetes, rheumatism, and numerous other diseases. The advertisement was set forth in full in the affidavit, and it was charged that the publication was made for the purpose of soliciting and procuring wrongfully and fraudulently patients to submit themselves to medical treatment by him; that certain of the statements contained in the advertisement are false, and were known to appellant to be false when he made them, and were published with the intent to deceive the public and to impose upon the credulous and ignorant. Due notice of the charges was given, and a hearing was held at which testimony was heard, and which resulted in the license of the appellant being revoked. Application was made to the district court for a writ of *certiorari* to review the proceedings. A demurrer to the petition was sustained, and the writ refused, from which order this appeal is prosecuted.

C. F. Ainsworth, for Appellant.

The legislature has no right or authority to vest in any board or commission the power or right to declare that certain acts, after they have been done, shall constitute a crime for which such license shall be revoked, and that where a statute is indefinite or uncertain in pointing out what shall constitute the crime or ground of revocation, such board or commission has no power or authority to supply such omission by declaring that certain conduct or acts, not mentioned in the statute, shall be considered as coming within the purview of the law, and be ground for revoking such license. If physician's license is to be revoked for grossly improbable statements, it is requisite that the statute authorizing such revocation define what shall constitute such statements, so that the physician may know in advance the penalty he incurs in making them. *Hewitt* v. *Board of Medical Examiners*, 148 Cal. 590, 113 Am. St. Rep. 315, 84 Pac. 39, 3 L. R. A., N. S., 896, 7 Am. Cas. 750; *Ex parte McNulty*, 77 Cal. 164, 11 Am. St.

Rep. 257, 19 Pac. 237; *Matthews* v. *Murphy*, 23 Ky. Law Rep. 750, 63 S. W. 785, 54 L. R. A. 415. "The liberty of the petitioner cannot be made to depend upon a thing so vague and uncertain as the undefined views of the members of the board as to what constitutes unprofessional conduct." The statute does not provide for any method of appeal from the decision of the appellee, and therefore a review by writ of *certiorari* is the proper proceeding. "It is the general rule that the writ will lie in all cases where no adequate remedy exists by which an erroneous determination can be reviewed or excess of jurisdiction restrained." *Territory* v. *Doan,* 7 Ariz. 89, 60 Pac. 893; *People* v. *County Judge,* 40 Cal. 479; *People* v. *Betts,* 55 N. Y. 600; *Cunningham* v. *Berry,* 17 Or. 622, 22 Pac. 115; *Young* v. *Cannon,* 2 Utah, 560. Where a statute is vague or indefinite in its terms, it is void. *Tozer* v. *United States,* 52 Fed. 917; *Chicago* v. *Dey,* 35 Fed. 866; *Louisville* v. *Commissioners,* 99 Ky. 132, 59 Am. St. Rep. 457, 35 S. W. 129, 33 L. R. A. 209; *Ex parte Jackson,* 45 Ark. 164.

John B. Wright, Attorney General, for Respondent and Appellee.

*Certiorari* is not a right but depends upon the discretion of the court. *In re Hitz,* 111 U. S. 766, 4 Sup. Ct. 698, 28 L. Ed. 592. It is nowhere claimed that the lower court abused its discretion in refusing to grant the writ prayed for. This court will not interfere, therefore, with the exercise of the discretion of the lower court, unless it appears that such discretion has been abused. *Reilly* v. *Clark,* 2 Ariz. 299, 15 Pac. 141; *Hampson* v. *Adams,* 6 Ariz. 335, 57 Pac. 621. Act No. 59, Session Laws 1903, is valid, in so far as it permits the Board of Medical Examiners to determine what constitutes "unprofessional conduct"; and as conclusive of our contention, cite the case of *Meffert* v. *Packer,* 66 Kan. 710, 72 Pac. 247, 1 L. R. A., N. S., 811, 195 U. S. 625, 25 Sup. Ct. 790, 49 L. Ed. 350. "The objection that the statute attempts to confer judicial power on the boards is not well founded. The powers conferred on the boards of medical examiners are nowise different in character in this respect from those exercised by the examiners of candidates to teach in our public schools, or by tax assessors, or boards of equalization in determining,

for purposes of taxation, the value of the property. The ascertainment and determination of qualification to practice medicine by a board of competent experts, appointed for that purpose, is not the exercise of a power which appropriately belongs to the judicial department of the government.'' *Reetz* v. *Michigan,* 188 U. S. 505, 23 Sup. Ct. 390, 47 L. Ed. 563; *People* v. *Hasbrouck,* 11 Utah, 291, 39 Pac. 918; *Dreyer* v. *Illinois,* 187 U. S. 71, 83, 23 Sup. Ct. 28, 47 L. Ed. 79; *Cochise County* v. *Copper Queen Co.,* 8 Ariz. 221, 71 Pac. 946; *Hawker* v. *New York,* 170 U. S. 189, 18 Sup. Ct. 573, 42 L. Ed. 1002. ·

CAMPBELL, J.—The question presented by this appeal is as to the validity of section 7 of Act No. 59 of the Laws of 1903. The act creates a board of five members, to be known as the Board of Medical Examiners of Arizona, and provides a penalty for anyone practicing medicine without first having obtained a license therefor from the board. Provision is made for the granting of licenses to persons having certain qualifications. Section 7 provides: ''Upon proper proof to the Board of Medical Examiners of Arizona that the holder of any license issued under the provisions of this act has been guilty, since the issuance thereof, of any grossly immoral or unprofessional conduct rendering him or her unfit to practice medicine in this territory, or has been convicted of any felony, said board shall, after due notice to such holder and full opportunity to him or her to defend against or refute such charges, revoke and cancel such license. . . .''

It is too well settled to admit of discussion that the state, in its exercise of the police power, may prescribe the qualifications of those who are permitted to practice medicine, and may commit to a board created by it the authority to ascertain whether an applicant for permission to practice possesses the requisite qualifications, and also the power, after notice and opportunity to be heard, to revoke the license of any who become disqualified either morally or intellectually. *Dent* v. *West Virginia,* 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623; *Hawker* v. *New York,* 170 U. S. 189, 18 Sup. Ct. 573, 42 L. Ed. 1002; *Reetz* v. *Michigan,* 188 U. S. 505, 23 Sup. Ct. 390, 47 L. Ed. 563; *Meffert* v. *Packer,* 195 U. S. 625, 25 Sup. Ct. 790, 49 L. Ed. 350.

It is contended by appellant, however, that the statute under consideration, since it does not declare what shall be considered unprofessional conduct, is void for uncertainty. It is argued that "the term 'unprofessional conduct' is so vague and indefinite that no one can be certain just what it embraces. It might be declared to include a breach of professional ethics, irrespective of any moral turpitude, and might be declared to include acts of so trivial a nature and of so little importance as to wholly preclude any of the elements of a crime." He attempts to distinguish those cases to which we shall hereinafter refer, which hold valid statutes conferring upon boards power to revoke the licenses of those found guilty of immoral conduct, from that before us on the ground that the term "immoral conduct," while in a measure indefinite, "contains an element of moral turpitude or disregard of the settled ideas or principles of morality, and are very easily recognized, by reason of their being a breach of what we all know to constitute moral conduct," but that "unprofessional conduct does not consist simply of breaches of moral conduct, does not necessarily include moral turpitude, and might consist of anything temporarily frowned upon by any board of physicians temporarily in power." His position finds support in decisions by the supreme courts of Kentucky and California and the court of appeals of the District of Columbia. *Matthews* v. *Murphy,* 23 Ky. Law Rep. 750, 63 S. W. 785, 54 L. R. A. 415; *Hewitt* v. *State Board of Medical Examiners,* 148 Cal. 590, 113 Am. St. Rep. 315, 84 Pac. 39, 3 L. R. A., N. S., 896; *Czarra* v. *Board of Medical Examiners,* 25 App. D. C. 443.

But we cannot agree that the meaning to be given the term "unprofessional conduct," as used in this statute, is that suggested by counsel for appellant. We think it should be held to mean that which is by general opinion considered to be grossly unprofessional because immoral or dishonorable. We cannot perceive that appellant's interpretation is tenable or could have been contemplated by the legislature when the language employed and the purpose of the legislation is considered. "Grossly immoral or unprofessional conduct" excludes the idea that a license may be revoked for trivial reasons or for a violation of what might be regarded as mere professional ethics. In *State* v. *State Medical Examining*

*Board,* 32 Minn. 324, 50 Am. Rep. 575, 20 N. W. 238, the court had before it a statute providing "the board of examiners may refuse certificates to individuals guilty of unprofessional or dishonorable conduct, and they may revoke certificates for like causes." In construing the words "unprofessional or dishonorable conduct," it is said: "We do not think that the legislature contemplated matters of merely professional ethics, but that the term 'unprofessional' was used convertibly with 'dishonorable.' . . . It might, for instance, be deemed unprofessional for the members of one school of medical practice to consult professionally with a member of a different school; but such matters are not within the plain purpose of the act, which was the affording of protection to the people against ignorant, unqualified, and unworthy practitioners of this profession." The supreme court of Illinois in *People* v. *McCoy,* 125 Ill. 289, 17 N. E. 786, had before it an action to recover a penalty for practicing medicine after an attempted revocation of a license. The defendant had been charged before the State Board of Health with having been guilty of "unprofessional and dishonorable conduct," in that he had published advertisements in which he had made "statements and promises with reference to the treatment and cure of the sick and afflicted, which are calculated to deceive and defraud the public." Recovery of the penalty was refused because the minutes of the board did not disclose that the defendant was adjudged guilty of the specific charge against him. In the discussion, the court says: "It may be conceded that under the tenth section of the act of 1877, to regulate the practice of medicine in this state, the Board of Health had power to revoke certificates issued to individuals to practice medicine for the same reasons it might refuse to issue such certificates, viz., for 'unprofessional or dishonorable conduct.' The statute in this respect, however, must have a reasonable construction. The board cannot from mere caprice, or without cause, revoke a certificate fairly issued upon a sufficient evidence of the applicant's qualifications. . . . It must be for some act or conduct that would in the common judgment be deemed 'unprofessional' or 'dishonorable.' . . . Had the board found him guilty of the charge alleged against him, that defendant had made 'statements and promises . . . calculated to deceive the public,' that, indeed, would have

been 'unprofessional and dishonorable conduct.' " In *State* v. *Board of Health,* 103 Mo. 22, 15 S. W. 322, it is said: "By section 6878, Revised Statutes of 1889, it is enacted that 'the State Board of Health may refuse certificates to individuals guilty of unprofessional or dishonorable conduct, and they may revoke certificates for like causes, after giving the accused an opportunity to be heard in his defense before the board.' The question whether the applicant is guilty of unprofessional or dishonorable conduct calls for the exercise of judgment and sound discretion. It is a question as to which the board must hear the evidence and pronounce a conclusion. . . . As the legislature has not defined what is 'unprofessional or dishonorable conduct,' those words must be understood to mean such conduct as would in 'common be deemed unprofessional or dishonorable. In determining whether a party is guilty of such conduct, there is a broad field for the exercise of judgment and discretion by the board and within which the finding of the board is conclusive. The Board of Health has no right to prescribe a code of medical ethics, and then declare a breach of that code unprofessional and dishonorable conduct; nor has it the right or power to deny to physicians the right to advertise their profession in the public press. The respondents make no claims of any right to do either of these things. Their claim is that advertisements which tend to mislead and deceive the public constitute unprofessional and dishonorable conduct, and in this they are within the purview of the law."

Giving the words the construction we do, the question of the validity of the statute is foreclosed by the decision of the supreme court of the United States, our appellate court. In *Meffert* v. *State Board of Medical Registration and Examination,* 66 Kan. 710, 72 Pac. 249, 1 L. R. A., N. S., 811, the action of a board in revoking a license of a physician was upheld under a statute giving it the power to revoke the license of one guilty of gross immorality. Upon an appeal to the supreme court of the United States, the judgment was affirmed without discussion. *Meffert* v. *Packer,* 195 U. S. 625, 25 Sup. Ct. 790, 49 L. Ed. 350. In that case the statute does not define what shall be considered gross immorality. Its ascertainment is left to the common judgment as to what is grossly immoral, as our statute leaves grossly unprofessional

conduct to be ascertained.   See, also, *State* v. *Board,* 34 Minn. 391, 26 N. W. 125.

The judgment of the district court is affirmed.

CAMPBELL, DOAN, LEWIS, and DOE, JJ., concur.

NOTE.—Power to revoke physician's license, see note in 1 L. R. A., N. S., 811.

Grounds for revoking physician's license, see notes in 8 L. R. A., N. S., 585; 17 L. R. A., N. S., 439; 30 L. R. A., N. S., 783.