[Criminal No. 875.  Filed January 30, 1939.]

[86 Pac. (2d) 942.]

EDDIE LOVELAND and KATHRYN LOVELAND, Appellants, v. STATE OF ARIZONA, Respondent.

Mr. John C. Lee and Mr. John W. Ray, for Appellants.

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley, Assistant Attorney General, for the State.

NILES, Superior Judge.—The appellants, Eddie Loveland and Kathryn Loveland, were convicted in the superior court of Maricopa county by the verdict of a jury of the offense of contributing to the delinquency of Dora Ragsdale, a female child of the age of fourteen years. Woodrow Morton, charged jointly with the said appellants with the same offense, entered a plea of guilty. This appeal is from the judgment pronounced upon the verdict against the appellants.

The charging part of the information is in the following language:

"The said Eddie Loveland, Kathryn Loveland and Daniel Woodrow Morton on or about the 24th day of September, 1938, and before the filing of this information at and in the County of Maricopa, State of Arizona, and while in the company of one Dora Ragsdale, a minor of the age of fourteen years, did then and there wilfully and unlawfully furnish to and cause her, the said Dora Ragsdale, to drink and consume intoxicating liquors to the extent of causing her, the said Dora Ragsdale, to become intoxicated, all of

which acts will cause and encourage the said Dora Ragsdale to grow up to live an idle, dissolute and immoral life.''

The judgment of conviction is attacked upon seven different grounds. A discussion of four of these assignments will necessarily embrace and dispose of all points urged on appeal.

It is first urged, since chapter 91, Laws of the Regular Session 1933, provides that

''Any person who shall by any act, cause, encourage or contribute to the dependency or delinquency of a child, as these terms with reference to children are defined by the preceding section, or who shall for any cause be responsible therefor, shall be guilty of a misdemeanor, and upon trial and conviction thereof, shall be punished by a fine not to exceed three hundred and fifty dollars or by imprisonment in the county jail for a period not exceeding one year, or by both such fine and imprisonment'' (Section 2),

that the superior court does not have original jurisdiction and that the information was void because a preliminary hearing was not held.

The same question was presented to this court in the case of *Adams* v. *Stanford*, Judge, Superior Court, etc., 19 Ariz. 237, 240, 168 Pac. 641, 642, and after considering section 6, article 6 of the Arizona Constitution and the Code provisions carrying it into effect, the issue was disposed of in the following language:

''Therefore, superior courts have jurisdiction over every misdemeanor when the same is prosecuted by indictment or information presented to such court.''

It is next contended that the trial court erred in rejecting evidence offered by the defense to prove that Dora Ragsdale was in an intoxicated condition when she came to the home of the Lovelands on the 24th

day of September, 1938, and that such condition was caused by someone other than the appellants. This we feel is without merit since a violation of the same law by another or others on the same day or at any other time could not be accepted as an excuse or in mitigation of the offense charged to the Lovelands. An examination of the record also discloses that no attempt was made on the part of the defense to preserve this point for the consideration of this court by a proper offer of proof. *Collins* v. *State,* 37 Ariz. 353, 294 Pac. 625; *Riley* v. *State,* 50 Ariz. 442, 73 Pac. (2d) 96.

■ Appellants further contend that the court erred in instructing the jury that if they believed from the evidence beyond a reasonable doubt that defendants committed any act calculated to cause delinquency they should find the appellants guilty of the offense charged. In the first place we are not willing to agree, in view of the discussion following, that the instruction is erroneous in form or substance, but feel that the assignment can be more expeditiously disposed of by a reference to the reporter's transcript of the evidence. The instruction criticized is found on page 182 and is in the following language:

"In determining, gentlemen of the jury, whether the defendants have contributed, caused, or encouraged or contributed to her delinquency, as I have defined the term 'delinquency' to you, it is for you to determine from the evidence in this case whether or not the acts of the defendants as have been disclosed from the testimony upon the witness stand will tend to debase or injure the morals, health, or welfare of the minor child, Dora Ragsdale. If you believe from the evidence beyond a reasonable doubt that such acts would tend to do so, then your verdict should be that of guilty. If there is a reasonable doubt in your minds as to whether the acts testified to as having been com-

mitted here, or whether the acts disclosed from the evidence rather, if any such acts have been committed, would tend to debase or injure the health, morals, or welfare of the minor child—that is all for your sole determination—if there is a reasonable doubt in your minds as to the existence of those facts, then your verdict would be that of not guilty. And it is for you to say whether the defendants did commit any of the acts alleged in the information.

"That has to be proven beyond a reasonable doubt."

This was invited by the request of counsel for the defendants, found upon pages 181 and 182, in the following language:

"Mr. Ray: Yes. That is what I was going to do. I think the jury ought to be told that unless they believe beyond a reasonable doubt that such acts that they do believe have been proved were calculated to do that, whatever you want to call it, call it delinquency or dependency, that then they must give the defendants the benefit of that doubt, because there is no standard to go by. It ain't like horse stealing."

"The Court: Well, I think I have given that, but if there is any lack of clarity about it, I will add something to it."

Obviously the defendants will not be permitted to lead the court into error, if it can be called error, and then complain of it.

Last and more serious than any of the assignments foregoing is the contention of the appellants that the information is not sufficiently definite and certain to advise them whether they are charged with the violation of the provisions of section 4640, Revised Code of 1928, or chapter 91, Session Laws of 1933, and that if the information was drawn under the former it is fatally defective under the ruling of this court in *Jackson* v. *State,* 36 Ariz. 446, 286 Pac. 824, while if it purports to charge an offense under the provisions of the law of 1933 it states no offense because the law

itself fails to define an offense and is indefinite, uncertain and unconstitutional by reason thereof.

To dispose of this issue it will be necessary to first briefly review the history of this legislation. The provisions of section 4640, *supra,* were before this court in the Jackson case and we held in keeping with the weight of authority that to sustain a conviction it must be alleged and proved that the child was delinquent and that the accused caused or contributed to the same. Presumably to correct the shortcoming pointed out in this decision, the Eleventh Regular Session of the legislature by its House Bill No. 144, approved March 18, 1933, expressly provided:

"Necessary Proof. In order to find any person guilty of violating the provisions of this act, it shall not be necessary to prove that the child has actually become dependent or delinquent, provided it appears from the evidence that through any act of neglect or omission of duty or by any improper act or conduct on the part of any such person the dependency or delinquency of any child may have been caused or merely encouraged." Section 4.

This bill became chapter 91 of the Session Laws of 1933, *supra,* and further provided (in sec. 1):

"(b) The words 'delinquent person' shall include any person under the age of eighteen years who violates any law of this state, or any ordinance of any town, city, or county, of this state, defining crime.

"(c) The term 'delinquency' shall mean any act which tends to debase or injure the morals, health or welfare of a child.

"Sec. 2. Contributing to Delinquency and Dependency; Penalty; Procedure.

"Any person who shall by any act, cause, encourage or contribute to the dependency or delinquency of a child, as these terms with reference to children are defined by the preceding section, or who shall for any cause be responsible therefor, shall be guilty of a misdemeanor, and upon trial and conviction thereof, shall

be punished by a fine not to exceed three hundred and fifty dollars or by imprisonment in the county jail for a period not exceeding one year, or by both such fine and imprisonment. The prosecution shall be the same as in other criminal cases. When the charge against any person concerns the dependency of a child or children, the offense for convenience may be termed contributory dependency and when it concerns the delinquency of a child or children for convenience it may be termed contributory delinquency.

"Sec. 3. Construction. This act shall be liberally construed in favor of the state for the purpose of the protection of the child from neglect or omission of parental duty toward the child by the parents, and also to protect the children of the state from the effects of the improper conduct, acts, or the bad example of any person or persons whomsoever, which may be calculated to cause, encourage or contribute to, the dependency or delinquency of children, although such persons are in no way related to the child."

It would seem, therefore, that under the plain language of the provisions of the foregoing that it is no longer necessary to allege or prove that the child was a delinquent person as above defined, but that it is sufficient, using the liberal yardstick of construction provided by the legislature, to allege and prove simply that the accused caused, encouraged or contributed to some "act which tends to debase or injure the morals, health or welfare of a child." Section 1 (c), *supra*.

The charge that the accused furnished and caused Dora Ragsdale to drink and consume intoxicating liquor to the extent of causing her to become intoxicated was sufficient to justify the submission of this issue to the jury and the jury by its verdict having found that said act would *tend to debase or injure the morals, health or welfare of the said child* is suf-

ficient to sustain the conviction if the statute itself was constitutional.

■ The information was obviously drawn under chapter 91, *supra,* and the case tried throughout on that theory. If the appellants were not advised under which act the information was tried or were "ambushed" as they contend, the criticism involving only a failure to identify the offense charged with one or the other of said acts, the office of a demurrer should have been invoked and the uncertainty not having been thus challenged the irregularity was waived.

■ Proceeding to the other horn of the dilemma, it is next urged by the appellants that chapter 91, *supra,* is a nullity in that the statute makes it a misdemeanor for any person to encourage, cause or contribute to the dependency or delinquency of a minor child but does not specify or define the particular act or acts which constitute the offense; and that any law which characterizes an act as a crime or not, according to the moral sentiments of the judge or jury, after the act has been committed is so uncertain and indefinite as to amount to a snare and a delusion and untenable under the Constitution of the state of Arizona. In support of this contention are cited *Ex parte Andrew Jackson,* 45 Ark. 158; *United States* v. *Reese,* 92 U. S. 214, 23 L. Ed. 563; *International Harvester Co.* v. *Kentucky,* 234 U. S. 216, 34 Sup. Ct. 853, 58 L. Ed. 1284. It is true that the ruling in these cases has been followed in many jurisdictions where the peculiar circumstances of the individual case justified its application, but on the other hand it is equally true that there is almost no dissent from the rule that it is the duty of the court to sustain and uphold statutes rather than to ignore and defeat them and to give them operation if the language will per-

mit instead of treating them as meaningless. *Coggins* v. *Ely,* 23 Ariz. 155, 202 Pac. 391.

This court in *Aiton* v. *Board of Medical Examiners of Arizona,* 13 Ariz. 354, 358, 114 Pac. 962, 963, L. R. A. 1915A 691, construing a statute authorizing the revocation of a physician's license for *grossly immoral or unprofessional conduct* rendering him unfit to practice, said:

"But we cannot agree that the meaning to be given the term 'unprofessional conduct,' as used in this statute, is that suggested by counsel for appellant. We think it should be held to mean that which is by general opinion considered to be grossly unprofessional because immoral or dishonorable. We cannot perceive that appellant's interpretation is tenable or could have been contemplated by the Legislature when the language employed and the purpose of the legislation is considered. 'Grossly immoral or unprofessional conduct' excludes the idea that a license may be revoked for trivial reasons or for a violation of what might be regarded as mere professional ethics."

Again in *Branham* v. *State,* 33 Ariz. 170, 263 Pac. 1, it was held that a statute condemning failure to provide "without lawful excuse" for minor children was not void for uncertainty because it left to the judge and jury the issue of what is "lawful excuse." Counsel for appellants argue with great zeal that the terms "tends" and "calculated" as used in said law are inapt and render the context vague and uncertain. This identical language was discussed and approved of in *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86, 109, 29 Sup. Ct. 220, 226, 53 L. Ed. 417, 430, with the following observations:

"Take the act of 1903, which denounces acts which 'tend' to bring about the prohibited results. It is not uncommon in criminal law to punish not only a

completed act, but also acts which attempt to bring about the prohibited result.''

And again at page 110, (29 Sup. Ct. at page 227):

''As to the phrase, 'reasonably calculated,' what does it include less than acts which, when fairly considered, tend to accomplish the prohibited thing, or which make it highly probable that the given result will be accomplished?''

██ The great weight of authority sustains the view that the legislature in creating an offense may define it by a particular description of the act constituting it or may define it as an act which produces a certain defined or described result. *Waters-Pierce Oil Co.* v. *Texas, supra; State* v. *Stuth,* 11 Wash. 423, 39 Pac. 665; *State* v. *Fox,* 71 Wash. 185, 127 Pac. 1111, (affirmed 236 U. S. 273, 35 Sup. Ct. 383, 59 L. Ed. 573); *State* v. *Lawrence,* 9 Okl. Cr. 16, 130 Pac. 508.

In *State* v. *Friedlander,* 141 Wash. 1, 250 Pac. 453, 455, the court, in construing a statute of the same general character as ours, sums up the law in the following language:

''The next contention is that the statute under which the prosecution is had is in itself unconstitutional. The statute makes it a misdemeanor for any person to 'encourage, cause, or contribute to, the dependency or delinquency' of a minor child, but does not specify or define the particular act or acts which will constitute the offense. But, under the rule as we have hereinbefore announced it, the objection is not fatal. It is within the province of the Legislature in creating an offense to define it by a particular description of the acts constituting it, or to define it as an act which produces a certain defined or described result.''

██ ██ Measured by these standards we conclude, therefore, that chapter 91, *supra,* constitutes a valid exercise of legislative power and is capable of certain

enforcement, and that the information certainly and sufficiently charged an offense thereunder.

The judgment of the lower court is affirmed.

ROSS, C. J., and McALISTER, J., concur.

LOCKWOOD, J., deeming himself disqualified, the Honorable J. C. NILES, Judge of the Superior Court of Maricopa County, was called to sit in his place.