Bergan, J.
These three cases, heard together although differing in details, have a common question: What constitutes moral depravity or the '' danger of becoming morally depraved ’ ’ within the wayward minor provisions of subdivisions (5) and (6) of section 913-a of the Code of Criminal Procedure?
Appellants attack the constitutionality of the statute for vagueness and for opening the possibility of conviction and a penal-type method of correction for persons between 16 and 21 on standards which, for an adult, would not be sufficiently definite as to exactly the kind of conduct which would lead to correction.
The court, as recently as 1966, has sustained the constitutionality of the statute (People v. Salisbury, 18 N Y 2d 899) against the argument that “ morally depraved ” was too vague a statutory prescription (p. 900); and for the reasons which are developed here leading to reversal of these convictions on the merits it is unnecessary to reconsider the constitutional issue.
A person adjudged a wayward minor may be committed to a “ reformative institution” (Code Crim. Pro., § 913-c), subject to release therefrom as in the case of “ adult ” offenders (Code, § 913-d), and these include Elmira Reception Center (Correction Law, § 61) or Elmira Reformatory (id., § 64).
The year after Salisbury was here, the Supreme Court decided Matter of Gault (387 U. S. 1 [1967]) holding a juvenile delinquent in a Juvenile Court in Arizona was entitled to due process substantially similar to that which would underlie criminal charges against an adult. (See, also, Specht v. Patterson, 386 U. S. 605 [1967]).
It seems fair to read Gault as Justice Stewart described it in dissent, that it tended to impose on juvenile courts the “ restrictions that the Constitution made applicable to adversary criminal trials ” (p. 78).
To be consistent, this procedural requirement should apply as well to the substantive definition of acts committed by juve *470 niles which are made the subject of corrective or penal discipline.
It is true, of course, as the People argue, that the protection of the young permits some variation in statutory and other legal arrangements affecting them. Obscenity in its impact on children is one example (Ginsberg v. New York, 390 U. S. 629, [1968]; Bookcase, Inc. v. Broderick, 18 N Y 2d 71, 75, app. dsmd. sub nom. Bookcase, Inc. v. Leary, 385 U. S. 12; People v. Kahan, 15 N Y 2d 311, 312). But, as the court held in People v. Munoz (9 N Y 2d 51, 60), an act made an offense for a juvenile and not for an adult is open to attack as discriminatory.
Some guidance on the general sufficiency of ‘ ‘ morally depraved or is in danger of becoming morally depraved” (§ 913-a, subds. [5], [6]) is possible by reading Giaccio v. Pennsylvania (382 U. S. 399 [1966]) where the statute prohibiting the discharge of firearms at another person permitted the jury to assess costs against the accused, even if acquitted, under some circumstances from which the jury might infer misconduct.
The trial court, in interpreting the statute, charged this could be done if the jury, acquitting defendant on the crime charged, nevertheless found defendant guilty of misconduct “ of some kind as a result of which he should be required to pay some penalty ” (p. 404). This was held too vague to justify even the imposition of costs (see opn., Black, J., 382 U. S. 399, 404).
The decision of this court invalidating the vagrancy statute (Fenster v. Leary, 20 N Y 2d 309 [1967]) throws collateral light on some theoretical aspects of the present cases. See, also, on this point People v. Munoz (9 N Y 2d 51, supra).
Although, as it has been noted, it is unnecessary to reconsider the general validity of the statute or presently overrule Salisbury, in view of the tightening of due process requirements in this type of juvenile proceeding authorizing the judicial option of confinement in institutions which serve also for the treatment of persons convicted of felony, particular care should be taken that the charge has substance based on acts which point to grave danger to youth and is not merely a compliance with form; and that the conduct inquired into is seriously harmful and not merely an exaggerated manifestion of intra-family parent-child conflict.
A decision of the Appellate Division rather closely following the enactment of the wayward minor statute suggests this care *471 (People ex rel. Deordio v. Palmer, 230 App. Div. 397 [1930]). Among other things, it was there held a determination under section 913-a could not be predicated alone on a plea of guilty. But see, also, People ex rel. Pogoda v. Superintendent (217 App. Div. 763 [1926]).
It is not easy to define this for all kinds of situations and, of course, the draftsmen of the statute in 1923 (L. 1923, ch. 868) had difficulties intrinsic to the objective sought. Part of the trouble in the resolution of the draft is “morally depraved”, a term which probably changes in meaning for each generation. The term is one not readily visualized. Even less easily palpable is ‘ ‘ danger of becoming ’ ’ morally depraved.
A dictionary definition of “ depraved ” is “ marked by debasement, corruption, perversion or deterioration ” (Webster’s Third New International Dictionary [1961]). These characteristics, each suggesting regression, are undoubtedly rare in young people.
The term “ morally depraved ” is used conjunctively in specifications (5) and (6) of section 913-a; in one instance combined with the desertion of home and in the other with disobedience to parents. When either of these things is shown “ and ” there is moral depravity or “danger” of it, the youth may be “ deemed ” a wayward minor.
In the three present cases, one or the other of the conjunctive conditions may be deemed established, principally disobedience to parental commands, but the establishment of moral depravity, in addition, is open to valid objection and on analysis the proof of this necessary statutory ingredient is insufficient.
In Joan Klein’s case, the 18-year-old girl was in conflict with her father concerning her conduct. She had formed an attachment to a man of 30 to whom her parents objected. Her father’s complaint to the court stated she “ may have indulged in sexual intercourse with her boy friend, has a key to the apartment of her boy friend ’ ’.
There is no proof of sexual intercourse and defendant herself not only denied it but stated she did not believe in sexual intercourse before marriage. The key to her friend’s apartment she explained as having because she had delivered pictures there on one occasion.
*472 The complaint also alleged that she ‘‘ stayed away from home for the last three days ’ ’; but defendant testified she stayed at the home of married people, whom she named, on one of the two nights she was not in her parents ’ house; and spent the other alone at a hotel she named. For the rest, she testified she worked at two jobs and had completed high school. It is a fair appraisal of this record to say it shows the defendant in growing conflict with her parents and thus disobedient to them within the terms of the statute; but it fails fairly to establish a reasonable basis to say she is either morally depraved or in danger of becoming so.
In John Fuller’s case, his mother complained that he did not obey her, stayed out late, associated with people of whom she did not approve and was abusive to her. At time of trial defendant was between 17 and 19 years old. His mother also testified that she had found narcotic implements in the house; but since her son had been in custody on this present charge for a week before she found the items and other people lived in the house, the court refused to receive this evidence.
For the rest, she testified she believed be used narcotics because of his ‘ ‘ actions and everything ’ ’ and also that sometimes he stayed out all night but had told her he was staying at a friend’s house.
Defendant denied the use of drugs and stated he had been working in a hospital and had left this job on his own in order to seek a new position. He was adjudicated a wayward minor June 17, 1966. A Judge, other than the Trial Judge, imposed sentence on July 26, some five weeks after the adjudication. Counsel for defendant told the court at sentence that the mother, who had made the complaint, said “he’s working and he’s at home now and behaving himself ’ ’.
Nevertheless, defendant was sentenced to Elmira Reception Center. Thus, with no proof of any substantive act except disobedience and being abusive, defendant has been committed to an institution commonly used for people convicted of felony. The proof does not justify the adjudication.
In John Allen’s case, the proof is adequate that defendant was addicted to narcotic drugs. The charge made by his mother included this and that he “ steals money from the home ”, keeps “ late hours ” and refuses to obey her commands ; that he was *473 morally depraved or in danger of becoming so. Proof of stealing of money from the home was that on one occasion he took 15 cents.
At the time of the charge in September, 1966, defendant was 20 years old; he is now over 22 years old. He was adjudicated a wayward minor and sentenced to Elmira Reception Center. Essentially defendant is a narcotics addict in need of treatment rather than a wayward minor under the present charge, and the People, on argument here, suggest remission to consider placement for treatment under article 9 of the Mental Hygiene Law.
The judgments in Klein and Fuller should be reversed and the complaints dismissed; and in Allen, the judgment should be reversed and the charge remitted to the Criminal Court, Kings County, to consider treatment under article 9 of the Mental Hygiene Law.