Argued March 7, reargued April 10, reversed and remanded
with directions July 24, 1969

STATE OF OREGON, *Respondent, v.*
RALPH PAUL HODGES,
*Appellant.*

457 P2d 491

*John G. Meyer,* Eugene, argued the cause and filed
a brief for appellant.

*Michael E. Murphy,* Deputy District Attorney, Eu-
gene, argued the cause for respondent. On the brief

were John B. Leahy, District Attorney, and John E. Moore, Deputy District Attorney, Eugene.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

GOODWIN, J.

The defendant was convicted of violating ORS 167.210 (contributing to the delinquency of a minor), and appeals. His principal assignment of error asserts that the statute under which he was indicted is unconstitutional.

The indictment, insofar as material, reads as follows:

"The above named RALPH PAUL HODGES is accused by the Lane County Grand Jury by this Indictment of the crime of CONTRIBUTING TO THE DELINQUENCY OF A MINOR committed as follows:

"The said RALPH PAUL HODGES on or about the 15th day of August, 1967, in the county aforesaid, did then and there in the presence and view of Debbie Loraine Sauer, a ten-year-old unmarried female child, wilfully and lewdly expose, fondle and manipulate his private parts, which act did manifestly tend to cause said child to become delinquent   *   *   *."

ORS 167.210 provides:

"When a child is a delinquent child as defined by any statute of this state, any person responsible for, or by any act encouraging, causing or contributing to the delinquency of such child, or any person who by threats, command or persuasion, endeavors to induce any child to perform any act or follow any course of conduct which would cause it to become a delinquent child, *or any person who*

*does any act which manifestly tends to cause any child to become a delinquent child,* shall be punished upon conviction by a fine of not more than $1,000, or by imprisonment in the county jail for a period not exceeding one year, or both, or by imprisonment in the penitentiary for a period not exceeding five years." (Emphasis supplied.)

Heretofore, we have upheld the quoted statute against a variety of challenges. See, e.g., *State v. Gordineer,* 229 Or 105, 366 P2d 161 (1961); *State v. Harmon,* 225 Or 571, 358 P2d 1048 (1961); *State of Oregon v. Peebler et al,* 200 Or 321, 265 P2d 1081 (1954), *State v. Stone,* 111 Or 227, 226 P 430 (1924). We have not, however, until today considered the catch-all clause of the statute in the specific context of an assertion that ORS 167.210 is unconstitutional "on its face."

The vagueness of the challenged statute does not lie in its failure to define delinquency. We are permitted to look elsewhere in the statutes, if necessary, to find a definition of a "delinquent child." In ORS 418.205, we find "delinquent child" defined as one whose conduct or condition is such as to fall within the provisions of paragraphs (a), (b), and (c) of Subsection (1) of ORS 419.476. See *State v. Harmon,* supra.

The relevant sections of ORS 419.476 provide as follows:

"(1) The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a) Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city; or

"(b) Who is beyond the control of his parents, guardian or other person having his custody; or
"(c) Whose behavior, condition or circumstances are such as to endanger his own welfare or the welfare of others; or
"* * * * * *."

The language tested for vagueness, as applied to the case at bar, then reads:

"* * * [O]r any person who does any act which manifestly tends to cause any child to become * * * [a child subject to the jurisdiction of the juvenile court because his] behavior, condition or circumstances are such as to endanger his own welfare or the welfare of others * * *."

In *State v. Casson*, 223 Or 421, 427, 354 P2d 815, 819 (1960), we held that, if the foregoing statement of a crime was to be upheld against constitutional attack, some limitations upon the generality of the statute would have to be imposed. The *Casson* case held that the catch-all clause of the statute could be constitutionally applied only if the acts described in the indictment were of such a character that the court could hold as a matter of law that such conduct would, if unchecked, produce delinquency in a victim.

The highest courts of several states having statutes similar to ours have upheld their statutes on broad policy grounds: the worthy purpose of such laws and the desirability of carrying out legislative intent. *Brockmueller v. State*, 86 Ariz 82, 340 P2d 992 (1959); *Loveland v. State of Arizona*, 53 Ariz 131, 86 P2d 942 (1939); *State v. Barone*, 124 So 2d 490 (Florida, 1960); *McDonald v. Commonwealth*, 331 SW2d 716 (Ky, 1960); *State v. Roessler*, 58 NM 102, 266 P2d 351 (1954); *State v. McKinley*, 53 NM 106, 202 P2d 964 (1949); *Commonwealth v. Randall et al*,

183 Pa Super 603, 133 A2d 276 (1957); *State v. Fried-lander*, 141 Wash 1, 250 P 453 (1926). Contra, *State v. Vallery*, 212 La 1095, 34 So2d 329 (1948); *Stone v. State*, 220 Ind 165, 41 NE2d 609 (1942).

Case-matching in this field, however, is not a particularly meaningful exercise. For example, in *People v. Allen*, 22 NY2d 465, 293 NYS2d 280, 239 NE2d 879 (1968), the Court of Appeals of New York avoided declaring the "morally depraved" clause of that state's similar statute unconstitutionally vague by holding that the specific acts charged (staying out all night, and the like) did not constitute moral depravity.

■ The defendant now argues that even where the trial court can, by following the *Casson* case, make a preliminary ruling that will narrow the scope of the statute, the challenged clause is nonetheless void on its face because it contains no standards by which a jury can determine guilt.

"It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case. See, *e.g., Lanzetta v. New Jersey*, 306 U. S. 451; *Baggett v. Bullitt*, 377 U. S. 360 * * *." Giaccio v. Pennsylvania, 382 US 399, 86 S Ct 518, 15 L Ed 2d 447 (1966).

Whether a statute challenged on the ground of vagueness is void on its face or reasonably lends itself to a construction limiting its application to an identifiable factual situation that will save its constitutionality is a question of degree. See *United States v. National Dairy Products Corp.*, 372 US 29, 33, 83 S Ct 594, 598, 9 L Ed 2d 561, 566 (1963). The

United States Supreme Court has made it clear, for example, that statutes impinging upon First Amendment rights will be strictly tested. Vagueness, or overbreadth, will render such statutes void and little or no effort will be made to save such a statute by narrowing its application. See, e.g., *Thornhill v. Alabama,* 310 US 88, 60 S Ct 736, 84 L Ed 1093 (1940).

The *Thornhill* doctrine grew out of a challenge of a local law which purported to prohibit all picketing in labor disputes. The court did not pause to consider whether the particular picketing in the case before it constitutionally could have been punished, but struck down the statute as void on its face because it violated the First Amendment right of free speech. The *Thornhill* rule is not invoked, however, unless the terms of the questioned statute are so broad that their application in a normal, nondiscriminatory way would violate the individual's constitutional rights. *United States v. Petrillo,* 332 US 1, 9-12, 67 S Ct 1538, 91 L Ed 1877 (1947).

The *National Dairy Products* rule, on the other hand, requires a court to consider a challenged statute in its factual setting, rather than in the abstract. Thus, where a challenged statute does not on its face appear to violate a constitutionally protected right, it is correct to attempt, if possible, to construe the statute in such a manner that its constitutionality can be saved. See, e. g., *United States v. Harriss,* 347 US 612, 74 S Ct 808, 98 L Ed 989 (1954).

Criminal laws which have little or no ideological context seem to fall somewhere between the *Thornhill* and *National Dairy* doctrines. Some vagueness can be tolerated in criminal laws which do not trespass upon First Amendment freedoms. But the United

States Supreme Court has not set down rules that will apply in all cases. The authorities do agree, however, that the terms of a penal statute creating an offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. See Freund, *The Use of Indefinite Terms in Statutes*, 30 Yale L J 437 (1921), and recent cases collected in the Annotation of *Ashton v. Kentucky*, 384 US 195, 86 S Ct 1407, 16 L Ed 2d 469, at 1231 (1966).

■ In addition to its due-process function of putting persons on notice of the law's demands, reasonable certainty serves a second purpose: adjudication. A law that permits the judge and jury to punish or withhold punishment in their uncontrolled discretion is defective as much for its uncertainty of adjudication as for its failure to notify potential defendants of its scope and reach.

A law that is too vague for reasonable adjudication is bad on two grounds. A vague statute lends itself to an unconstitutional delegation of legislative power to the judge and jury, and, by permitting the jury to decide what the law will be, it offends the principle, if not the rule, against *ex post facto* laws. See Oregon Constitution, Art I, § 21.

It was argued in the case at bar that the jury should be permitted to exercise its own common sense and good judgment on the causes of delinquency, but this argument begs the question. Without a legislative declaration of standards, the trial court would have no basis for submitting one case to a jury and refusing to submit another case to a jury. Further, the trial jury would have no basis for deciding that a given course of conduct tended to endanger the wel-

fare of a child, or that it had no such tendency. Some degree of *ad hoc* legislation by juries in finding defendants not guilty may be unavoidable and socially desirable to ease the edges of the criminal law, but the free-wheeling power to legislate so as to find a defendant guilty should not be institutionalized in a criminal statute. Such a statute not only creates a serious danger of inequality in the administration of the criminal law, but it runs squarely contrary to the purpose of Oregon Constitution, Art I, § 21, which prohibits the delegation of legislative power.

The very looseness of the language of ORS 167.210 encourages the prosecution to utilize the statute selectively to rid the community of individuals deemed subjectively less desirable than other offenders. It is the looseness of the language which offends due process and makes the catch-all clause of the statute an instrument of potential abuse.

The cause is remanded to the trial court with directions to discharge the defendant in this proceeding and for reference to the grand jury in the event that the prosecution deems it proper to proceed under another statute.

Reversed and remanded with directions.

HOLMAN, J., specially concurring.

The effect of the majority opinion is to abandon the rule laid down in *State v. Casson*, 223 Or 421, 354 P2d 815 (1960), and *State v. Peebler et al*, 200 Or 321, 265 P2d 1081 (1954). In these cases, the statute was construed to intend to prohibit only those acts which, as a matter of law, could clearly tend to produce delinquency. It was evident that only those acts would be proscribed which were commonly recognized by everyone as tending to have such effect. As a prac-

tical matter it is impossible to describe with exact particularity all conduct sought to be prohibited. It is my opinion that the statute, thus construed, does not constitute a trap to the unwary or undiscriminating citizen because of the vagueness with which the prohibited conduct is described. "Void-for-vagueness" in criminal law context is the legal terminology which is used when courts believe that the forces of government can exercise too great leeway in choosing whom and for what it may prosecute and convict. See Amsterdam, *Void-For-Vagueness Doctrine in the Supreme Court*, 109 Pa L Rev 67 (1960). It is my belief that, considering the manner in which the statute has been construed, there is no such danger here. I would not hold the statute unconstitutional for vagueness.

However, applying the rule of *Casson* and *Peebler* I would reach the same result as the majority because I believe, as a matter of law, that the acts of an exhibitionist, under the circumstances here, would not tend to cause delinquency in a child, distasteful as such actions may be. The defendant should have been prosecuted under the statute which prohibits the specific acts he performed.

The majority opinion, because it concerns itself with only that portion of the language of the challenged statute which was used in the present indictment, leaves the impression that the balance of the statute may be constitutional. If the challenged portion of the statute is unconstitutional because of the extent to which it allows the various instrumentalities of government the discretion to determine what conduct is prohibited by it, the balance of the statute is equally defective. The statute prohibits: (1) acts which encourage, cause or contribute to existing de-

linquency; (2) endeavoring by threats, commands or persuasion to induce any act or course of conduct which would cause delinquency; and (3) acts which manifestly tend to cause delinquency. None of the three classes defines with any greater particularity than the other the acts which are sought to be prohibited. The forces of government are equally at large in deciding the kind of conduct which caused, would cause or tends to cause delinquency. The legislature should be aware of the full import of the majority opinion.

SLOAN and DENECKE, JJ., join in this specially concurring opinion.