Esther Frances **GESICKI** et al.,
Plaintiffs,

v.

Russell G. **OSWALD,** Commissioner of Correctional Services, et al.,
Defendants.

No. 71 Civ. 3276.

United States District Court,
S. D. New York.

Aug. 30, 1971.

---

Herman Schwartz, Edward I. Koren, Buffalo, N. Y., Rhoda H. Karpatkin, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for defendants; Samuel A. Hirshowitz, Arlene R. Silverman, Asst. Attys. Gen., of counsel.

LASKER, District Judge.

Esther Gesicki, Marion Johnson and Dominica Morelli have all been committed to terms in custody [1] under the Wayward Minor statute, New York Code of Criminal Procedure, §§ 913–a through 913–dd.[2] They sue under the Civil Rights Act and the Habeas Corpus Act to set aside their convictions, for a declaration that the statute is unconstitutional, and for injunctive relief, and seek to have the case determined a class action. Jurisdiction is predicated on 28 U.S.C. § 1343(3) and (4), as well as 28 U.S.C. § 2254(a). They claim that the statute violates their rights (a) under the due process clause of the Fourteenth Amendment because it is unconstitutionally vague, (b) it is in derogation of the equal protection clause of the Fourteenth Amendment since it punishes the behavior of persons between the ages of 16 and 21 which is not criminal or punishable for persons older than 21 or younger than 16, and (c) under the Eighth Amendment because it imposes cruel and unusual punishment, since it permits commitment under penal disci-

---

1. The parties apparently disagree as to whether all of the plaintiffs remain in custody. The complaint alleges that all three plaintiffs are "presently serving an indeterminate sentence of one to three years at Bedford Hills" (Bedford Hills Correctional Facility, also known as Westfield Reformatory). However, the affidavit of Arlene S. Silverman, Assistant Attorney General of New York, sworn to August 6, 1971, states that Gesicki was sent to Western Reformatory in Albion (without making it clear whether she has been transferred from Albion); that Johnson was paroled on July 26, 1971; and that it was anticipated that as of August 20, 1971, Morelli would be paroled from Bedford Hills.

2. Section 913–a will expire August 31, 1971, but plaintiffs and persons similarly situated (that is, persons found to have violated the statute before August 31, 1971) remain subject to its provisions until the expiration of their term in custody, parole, or probation. Under such circumstances, their standing to challenge the statute continues in effect, and indeed is not questioned by defendants. See Samuels v. Mackell, 288 F.Supp. 348 (S. D.N.Y.1968), aff'd 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). The fact that some of the plaintiffs may be on parole does not deprive them of standing. See Fhagen v. Miller, 306 F.Supp. 634 (S.D.N.Y.1969); Lollis v. New York State Department of Social Services et al., 322 F.Supp. 473 (S.D.N.Y.1970).

pline of minors who have not been found guilty of a crime, and does not afford them proper treatment.

The plaintiffs presently move for an order convening a three-judge court under 28 U.S.C. § 2281 ff.[3]

The defendants oppose on the grounds that, since the relief sought is that of habeas corpus, a single judge may decide the case, and that the complaint fails to set forth a substantial federal question.

## THE HABEAS CORPUS ISSUE

[1] The defendants contend that, because the plaintiffs seek to set aside their convictions, they may not, under the rationale of Rodriguez v. McGinnis, 451 F.2d 730 (2d Cir., 1971), and Katzoff v. McGinnis, 441 F.2d 558 (2d Cir., 1971), proceed under the Civil Rights Act. While the argument might be sound in other circumstances, it is not applicable here, since the New York Court of Appeals has more than once upheld the constitutionality of the Wayward Minor statute against the attack made by these plaintiffs. In such circumstances, it would be a futility to compel the plaintiffs to exhaust their state remedies (as required by the rule of *Rodriguez* and *Katzoff*), and, indeed, exhaustion is not required. United States ex rel. Hughes v. McMann, 405 F.2d 773 (2d Cir. 1968); Smith v. Follette, 69 Civil 5182 (S.D.N.Y.1970); Benton v. Copinger, 291 F.Supp. 141 (D.Md.1968).

In People v. Salisbury, 18 N.Y.2d 899, 276 N.Y.S.2d 634, 223 N.E.2d 43 (1966), the Court of Appeals sustained (without opinion) the constitutionality of the statute against the proposition that it was unconstitutionally vague. Two years later, after the decision of the Supreme Court in In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), establishing new standards of due process in juvenile proceedings, the Court of Appeals declined to reconsider the *Salisbury* decision, observing:

"The court, as recently as 1966, has sustained the constitutionality of the statute (People v. Salisbury, 18 N.Y. 2d 899, 276 N.Y.S.2d 634, 223 N.E.2d 43) against the argument that 'morally depraved' was too vague a statutory prescription * * *; and for the reasons which are developed here leading to reversal of these convictions on the merits it is unnecessary to reconsider the constitutional issue." People v. Allen, 22 N.Y.2d 465, 293 N.Y.S.2d 280, 239 N.E.2d 879 (1968).

Thereafter, in People v. Martinez, 23 N. Y.2d 780, 782, 297 N.Y.S.2d 144, 244 N. E.2d 711 (1968), the court again overruled a challenge to the constitutionality of the statute; this time on the grounds that its provisions required the incarceration of wayward minors in penal institutions and violated the equal protection clause of the Fourteenth Amendment and the cruel and unusual punishment clause of the Eighth Amendment.

The latest case to deal with the question is People v. Gregory E. (Anon), 26 N.Y.2d 622, 307 N.Y.S.2d 465, 255 N.E. 2d 721 (1970). There the court refused to rule further on constitutionality, although the constitutional issues were apparently raised.

With such a history of construction of the statute by New York's highest court, the plaintiffs here find themselves in the situation of the petitioner in United States ex rel. Hughes v. McMann, supra, 405 F.2d at 775–776, as to whom the court observed:

"Hughes manifests no desire to resort again to the New York courts. This is understandable since he would have scant prospect of success. * * *

---

3. Plaintiffs also move (1) to allow prosecution of the action as a class action, (2) to proceed in forma pauperis, and (3) to appoint as their counsel the attorneys who have represented them to date. As indicated in the text of this opinion, the motion for a class action is deferred for determination by the three-judge court. The motions to proceed in forma pauperis and to appoint counsel are denied without prejudice for lack of adequate evidence of the indigency of the plaintiffs.

We see no reason why Hughes should be put to a further journey through the New York courts that will almost certainly be futile; he is entitled to have his claim passed upon by a federal court without further ado."

With the case in this posture, we see no reason why the claims made under the Civil Rights Act may not be entertained, and accordingly we pass to the propriety of convening a three-judge court and the merits of the claims.

## CRITERIA FOR CONVENING A THREE-JUDGE COURT

A considerable body of literature has been generated with regard to the standards by which a single judge should determine the propriety of convening a three-judge court under § 2281. In Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), the Supreme Court stated that the District Court's function in deciding whether to convene such a court is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirement of the three-judge statute.

■ The "requirements" referred to are that the constitutional attack be against the state statute's general application and that a state officer is named as a defendant. Ince v. Rockefeller, 290 F.Supp. 878, 881 (S.D.N.Y.1968). Those requirements are met here, and the complaint alleges a basis for equitable relief. The thorny issue, however, remains, as it always does: Does the complaint raise a substantial constitutional issue? The Court of Appeals of this Circuit has recently expressed its differences with the view of the Fifth Circuit declared in Jackson v. Choate, 404 F.2d 910, 913 (1968), that "unless it is determined that it was an open and shut case three Judges must pass on the merits even though it means that three more must do so again." Johnson v.

New York State Education Dept., 449 F.2d 871 (1971). *Johnson* nevertheless affirms the proposition that where a case is not open and shut (as it is not here) the search must be, under the rule of California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938), to determine whether the decisions of the Supreme Court and other courts "which are as analogous as possible to the case at hand foreclose the subject." The discussion below indicates that on the subject at hand the decided cases have not "foreclosed the subject."

## IS THERE A SUBSTANTIAL CONSTITUTIONAL QUESTION?

Section 913–a of the Wayward Minor statute reads:

"Any person between the ages of sixteen and twenty-one who either (1) is habitually addicted to the use of drugs or the intemperate use of intoxicating liquors, or (2) habitually associates with dissolute persons, or (3) is found of his or her own free will and knowledge in a house of prostitution, assignation or ill fame, or (4) habitually associates with thieves, prostitutes, pimps or procurers, or disorderly persons, or (5) is wilfully disobedient to the reasonable and lawful commands of parent, guardian or other custodian and is morally depraved or is in danger of becoming morally depraved, or (6) who without just cause and without the consent of parents, guardians or other custodians, deserts his or her home or place of abode, and is morally depraved or is in danger of becoming morally depraved, or (7) who so deports himself or herself as to wilfully injure or endanger the morals or health of himself or herself or of others, may be deemed a wayward minor. The interstate compact on juveniles shall apply to wayward minors to the same extent as to minors below sixteen years of age except that the provisions of article four of said compact shall apply only to wayward minors included within (6) hereof."

The plaintiffs here were found to have violated subhead (5) or subhead (6) of § 913–a,[4] and in dealing with the question of whether the language of the statute is unconstitutionally vague we consider only those provisions.

"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." United States v. National Dairy Corp., 372 U.S. 29, 32, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963), citing United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

The question before us is whether the language of subheads (5) and (6) is such that the plaintiffs here or persons in their position could reasonably understand what conduct it proscribes. The answer must be in the negative. Whatever the significance of the phrase "morally depraved" may have had at an earlier date of more absolute standards, the mistiness of its contemporary interpretation is such as to make it unusable as a standard of conduct, and certainly such as to raise a substantial question as to whether it is not unconstitutionally vague. If this observation is true of the phrase "morally depraved," it is truer of the alternative phrase "or is in danger of becoming morally depraved." Difficult as it may be for a judge, no less a layman, to determine when a person is "morally depraved," it would seem to require an expert in behavioral science to decide who "is in danger of becoming morally depraved." It is no answer to suggest, as the defendants do, that before any of these plaintiffs was placed in an institution (but after having been found to have violated the statute) the County courts established specific guidelines for their future behavior.

"It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939).

Where loss of personal liberty may be imposed, a citizen is entitled to know before he comes to court—not after—what is the standard of accepted behavior.

" * * * the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties * * * And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

As Mr. Justice Holmes observed, with his characteristic mixture of whimsy and profundity,

"Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." McBoyle v. United States, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931).

4. Although there are some differences in the assertions of the parties as to the factual bases for the commitment of the plaintiffs, the record does establish that such violations as they committed fall within subheads (5) and (6) of Section 913–a. Gesicki claims that she was charged with being sexually promiscuous. Defendants allege that she was "in danger of becoming morally depraved" because of having had sexual relations with 14 men. Johnson says that she was found to have violated the statute because she refused to place her illegitimate child for adoption. Defendants contend that she was wilfully disobedient and "in danger of becoming morally depraved." Morelli asserts that she was found to have violated the statute because she ran away from home. Defendants claim that her offense was having had relations with her stepfather.

The language of the statute here appears as defectively imprecise as that condemned in Musser v. Utah, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562 (1948),— "to commit acts injurious to public morals," or "the use of rude, boisterous, offensive, obscene or blasphemous language * * * or to conduct oneself in a disorderly manner," Original Fayette County Civic and Welfare League v. Ellington, 309 F.Supp. 89, 92 (W.D.Tenn. 1970)—and may also run afoul of the rule against overbreadth enunciated in Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

Nor is the substantiality of the question disposed of under the theory that the Wayward Minor statute is non-criminal or non-penal. Wayward minors are deprived of their personal liberty and may be held in custody in the same institutions as adults who are convicted of crime. The procedures involved are identical to those in the prosecution of ordinary crimes. § 913–b.

A recent opinion of the Court of Appeals of New York supports the construction of the statute as criminal or quasi-criminal:

> "Quite different, * * *, is the treatment accorded wayward minors, youthful offenders and other young criminals. The proceedings leading to their incarceration, governed by the Code of Criminal Procedure are * * * 'adversary' in character." Matter of Jesmer v. Dundon, 29 N.Y. 2d 5, 323 N.Y.S.2d 417, 271 N.E.2d 905 (1971).

In any event, In Re Gault, supra, has instructed us that, even though proceedings relating to minors may be labeled "civil," the requirements of due process are nevertheless substantially applicable to them. See also Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L. Ed.2d 447 (1966).

Interpretations of the statute by the courts of New York do not rescue it from the dangers of vagueness. Faced by a definition so broad that it may be viewed as no definition, and the difficulty of rendering precise the language of the statute, the Court of Appeals of New York, in People v. Allen, 22 N.Y.2d, at 472, 293 N.Y.S.2d at 283, 239 N.E.2d at 881, has acknowledged that the term "morally depraved" is "not readily visualized." As the court stated:

> "It is not easy to define this for all kinds of situations, and, of course, the draftsmen of the statute in 1923 had difficulties intrinsic to the objective sought. Part of the trouble in the resolution of the draft is 'morally depraved', a term which probably changes in meaning for each generation. The term is one not readily visualized. Even less easily palpable is 'danger of becoming' morally depraved."

Although the court noted, by referring to the Supreme Court's opinion in In Re Gault, supra, that, "in view of the tightening of due process requirements in this type of juvenile proceeding authorizing the judicial option of confinement in institutions which serve also for the treatment of persons convicted of felony, particular care should be taken that the charge has substance based on acts which point to grave danger to youth and is not merely a compliance with form; and that the conduct inquired into is seriously harmful and not merely an exaggerated manifestation of intra-family parent-child conflict," (Id. at 470, 293 N.Y.S.2d at 282, 239 N.E.2d at 881) this illumination brings us little closer to the precision required by the due process clause; nor does the treatment of the subject in later decisions such as People v. Duke et al., 23 N.Y.2d 780, 297 N.Y.S.2d 144, 244 N.E.2d 711 (1968), or People v. Gregory E. (Anon.), 26 N.Y.2d 622, 307 N.Y.S.2d 465, 255 N.E.2d 721 (1970). Indeed, the wording of the statute appears to invite the problem pointed out by the President's Commission on Law Enforcement and Administration of Justice that statutes regulating the con-

duct of minors often "establish the judge as arbiter not only of behavior but also the morals of each child (and to a large extent the parents of each child) appearing before him." Task Force Report, *Juvenile Delinquency and Youth Crime,* at 25 (1967).

■ We conclude that the imprecision of the language set forth in subheads (5) and (6) of § 913–a, and the difficulty of narrowing its definition as illustrated by the decisions of the state's highest court, raise a substantial question as to whether that portion of the statute is not unconstitutionally vague.

This determination renders it unnecessary to dwell at length on whether the statute may not also be vulnerable, as plaintiffs contend, as violating the equal protection clause of the Fourteenth Amendment or the Eighth Amendment's proscription against cruel and unusual punishment. As to the equal protection clause, the determining question is whether the difference in treatment of persons in the age category of the plaintiffs, on the one hand, and those younger and older on the other, is rationally based. At to the Eighth Amendment issue, serious factual disputes exist between the parties as to the regimen and course of treatment made available to plaintiffs and others governed by the statute. The merit of plaintiffs' Eighth Amendment claim cannot be judged until this factual dispute is resolved.

Since plaintiffs have raised a substantial question as to whether the applicable portions of the statute are not unconstitutionally vague, the Chief Judge of this Circuit will be requested, pursuant to 28 U.S.C. § 2284, to convene a three-judge court.

The determination as to whether the case is appropriately brought as a class action and, if so, the propriety of the definition of the class, is deferred for decision by the three-judge court.

Submit order.