Lois SERO et al., Plaintiffs,

v.

Russell G. OSWALD, Commissioner of
New York State Correctional Serv-
ices, et al., Defendants.

No. 72 Civ. 778.

United States District Court,
S. D. New York.

Oct. 25, 1972.

New York Civil Liberties Union, Buffalo, N. Y. (Herman Schwartz, Edward I. Koren, Buffalo, N. Y., of counsel), American Civil Liberties Union, New York City (Melvin L. Wulf, New York City, of counsel), for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, for defendants (Michael Colodner, Asst. Atty. Gen., of counsel), for defendants.

## MEMORANDUM

LASKER, District Judge.

Plaintiffs, Lois Sero, Vanessa Carney and Rita Varner, are inmates of Bedford Hills Correctional Facility. Defendants are the Commissioner of New York State Correctional Services, the warden of Bedford Hills and the Governor of the State. Although convicted of crimes which carry a maximum sentence for adults of one year or less, plaintiffs are serving reformatory terms of up to four years pursuant to Sections 75.00 and 75.10, subd. 1 of the New York Penal Law and are deprived of the good behavior allowances provided non-reformatory inmates by §§ 803 and 804 of the New York Correction Law. They allege that these provisions operate to deprive them of their right to equal protection of the law and due process and constitute cruel and unusual punishment. They seek the convening of a three-judge court pursuant to 28 U.S. C. § 2281ff, as well as declaratory, in-

junctive and miscellaneous relief.[1] Defendants cross-move to dismiss the complaint.[2] Jurisdiction is predicated on 28 U.S.C. §§ 1343(3), (4), 2201 and 2281.

The district court's role in determining whether a three-judge court should be convened pursuant to 28 U. S.C. § 2281 is limited to deciding whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). These requirements, that the constitutional attack be against the state statute's general application and that a state officer be named as a defendant (Ince v. Rockefeller, 290 F. Supp. 878, 881 (S.D.N.Y.1968)), are met here, and the complaint alleges a basis for equitable relief. The sole issue which remains as to each of these statutes is whether the complaint raises a substantial constitutional issue. Despite the interrelationship between the statutes, we consider them separately for the sake of clarity.

## I

*New York Penal Law §§ 75.00 and 75.10, subd. 1.*

Section 75.00 of the Penal Law provides that, when sentencing a person aged 16 to 21 ("young adults"),

the court may, in lieu of any other sentence of imprisonment authorized by this title, impose a reformatory sentence of imprisonment. This shall be a sentence to imprisonment for a period of unspecified duration which shall commence and terminate as provided in section 75.10 and the court shall not fix the minimum or maximum length of the period.

Section 75.10, subd. 1 provides that a reformatory sentence terminates upon discharge of the inmate by the board of parole or the expiration of four years from commencement of the term, whichever is earlier. The practice commentary to Section 75.10, subd. 1 states that "the purpose of a reformatory sentence is to provide education, moral guidance and vocational training for young offenders who are badly in need of such instruction and counsel." McKinney's Consolidated Laws of New York, Penal Law, p. 156.

Plaintiffs claim that these provisions are unconstitutional on their face because 1) they violate the equal protection clause of the Fourteenth Amendment by discriminating against them (as compared to adults) without a rational or compelling basis; 2) they violate procedural due process because they do not provide for a separate hearing before the imposition of a reformatory sentence and because they establish no standards to guide the sentencing judge, thus permitting abuses of discretion and making appellate review impossible; and 3) they violate the cruel and unusual punishment clause of the Eighth Amendment and substantive due process by allowing the imposition of a sentence with a possible maximum

---

1. In addition to the convening of a three-judge court plaintiffs seek 1) a declaratory judgment that Sections 75.00 and 75.10, subd. 1 of the New York Penal Law and Sections 803–804 of the New York Correction Law are unconstitutional; 2) a preliminary injunction against the enforcement of these statutes; 3) permission to add six plaintiffs; 4) permission to proceed as a class action; 5) permission to proceed *in forma pauperis*; and 6) the appointment of Herman Schwartz, Edward I. Koren, Norman Rosenberg and Melvin Wulf as counsel to plaintiffs. Plaintiffs' motions to add six additional plaintiffs is granted. The motions to proceed *in forma pauperis* and for the appointment of counsel are granted as to Judy Spratling, Susan Pasnik, Daisy Johnson, Edna Griffin, Diane Piacentine and Linda Felong. The motions of Lois Sero, Vanessa Carney and Rita Varner are denied without prejudice for lack of adequate evidence of their indigency.

2. Defendants also move to quash plaintiffs' interrogatories and requests for admissions.

of four years for minor offenses. Plaintiffs contend, further, that the provisions are unconstitutional as applied because the treatment which is the justification for reformatory sentences is not in fact given to persons serving them.

■ Defendants oppose the convening of a three-judge court and cross-move to dismiss the complaint on several grounds. First, they claim that this action, which was brought pursuant to 42 U.S.C. § 1983, should have been brought as a habeas corpus action to be heard by a single judge after exhaustion of state remedies. Second, they argue that case law clearly upholds the constitutionality of the challenged provisions on their face and, accordingly, no substantial federal question is raised. Third, they contend that a three-judge court is not required to challenge the application of a statute which is constitutional on its face and that such a challenge cannot be brought as a class action. Finally, they maintain that the sentencing procedures do not deny reformatory inmates due process since discretion and flexible procedures are accepted characteristics of the sentencing process.

Defendants' contention that a suit such as this should have been brought as a habeas corpus action on behalf of the individual named plaintiffs before a single judge (after exhaustion of state remedies) was disposed of in Gesicki v. Oswald, 336 F.Supp. 365 (S.D.N.Y.1971) (convening opinion) and 336 F.Supp. 371 (S.D.N.Y.1971) (three-judge court), affirmed, 406 U.S. 913, 92 S.Ct. 1773, 32 L.Ed.2d 113 (1972). In Gesicki, plaintiffs challenged their confinement under the Wayward Minor Act in a suit brought pursuant to both the Civil Rights Act and the Habeas Corpus Act. The convening court found that exhaustion of remedies was not required since the state courts had recently and unambiguously upheld the constitutionality of the challenged statute. 336 F.Supp. at 367–368.

The case before us is in much the same posture as Gesicki. Lois Sero and Rita Varner, and another person not a named plaintiff, have actually exhausted their state remedies.[3] Since the City Court of Buffalo decided the issues before us adversely to Sero and Varner and the Erie County Court and the Court of Appeals denied them leave to appeal, "it would be a futility" (336 F. Supp. at 367) to require the other named plaintiffs to perform the empty formality of applying to the state courts for relief which they know will be refused them. United States ex rel. Hughes v. McMann, 405 F.2d 773, 775–776 (2d Cir. 1968).

■ Moreover, Gesicki shows that defendants' contentions that a suit such as this is not a proper class action and cannot be decided by a three-judge court are without merit. Gesicki clearly indicates that a habeas corpus action can be brought as a class action (336 F.Supp. at 373) and decided by a three-judge court (336 F.Supp. at 374, n. 3), if the prerequisites of a class action are met and an injunction against the enforcement of a state statute is sought. Indeed, the court in Gesicki held that the action could have been brought under either the Civil Rights Act (28 U.S.C. § 1343) or the Habeas Corpus Act (28 U.

---

3. Lois Sero, Rita Varner, named plaintiffs, and Myletta Joyner, who is not a named plaintiff, moved to set aside their sentence raising the same issues that are presented for decision here. Their motions were denied in decisions by Judge Kasler of the City Court of Buffalo. People of the State of New York v. Lois S. (Anonymous), Docket No. 1A–15863 (March 27, 1972) ; People of the State of New York v. Myletta J. (Anonymous), Docket No. 1A–8864 (March 27, 1972).

People of the State of New York v. Rita Varner, Docket No. 1A–9816 (November 10, 1971). Their applications for leave to appeal were denied by Judge Mattina of the Erie County Court as to Lois Sero and Myletta Joyner on April 12, 1972, and by Judge Colucci of the same court as to Rita Varner on February 24, 1972. Leave to appeal to the Court of Appeals was refused by Judge Jasen of that court on May 16, 1972, as to Sero and Joyner, and on April 20, 1972, as to Varner.

S.C. § 2254). 336 F.Supp. at 374, n. 3. The *Gesicki* rule is applicable here, but in one material respect this case is even less clearly a habeas corpus action than *Gesicki*. In *Gesicki*, the statute under attack had been repealed prior to the commencement of the action, though it remained in effect as to persons previously sentenced under its provisions, including the plaintiffs. Accordingly, the effect of the statute, there, was limited to the expiration of the term of those already in custody, or on parole or probation pursuant to its provisions. Here, plaintiffs seek to enjoin the full prospective application of a statute which is currently in effect, not just for those in custody but for those who might be affected by its provisions hereafter. Thus, this suit is even more clearly a suit properly brought under § 1983 than was *Gesicki*.

■ We come to the merits. To determine the propriety of convening a three-judge court we must decide whether the decisions of the Supreme Court and other courts which are as analogous as possible to the case at hand "foreclose the subject." California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938). Applying this test, it is clear that the issue of whether the provisions of the statute before us are unconstitutional on their face is foreclosed. A veritable plethora of cases from almost every circuit has upheld a similar provision under the federal Youth Corrections Act, which permits a judge to sentence a youthful offender to an indeterminate term with a possible maximum of six years with automatic conditional release after four years (18 U.S.C. §§ 5010(b), 5017(c)), even though adult offenders cannot be sentenced to as long a term. Challenges to this statute based on the due process clause of the Fifth Amendment and the cruel and unusual punishment clause of the Eighth Amendment by plaintiffs who would have received shorter sentences if sentenced as adults have consistently been rejected,[4] and the statute has been upheld by the Court of Appeals for this circuit. United States v. Dancis, 406 F.2d 729 (2d Cir.), cert. denied, 394 U.S. 1019, 89 S.Ct. 1640, 23 L.Ed.2d 44 (1969).

The federal Youth Corrections Act is, of course, not open to challenge as a violation of the equal protection clause of the Fourteenth Amendment as are the New York Penal Law provisions. However, it would be anomalous to hold the states to a stiffer standard than the federal government in this regard.[5] See Bolling v. Sharpe, 347 U.S. 497, 500, 74

---

4. *See, e. g.,* Caldwell v. United States, 435 F.2d 1079 (10th Cir. 1970); Abernathy v. United States, 418 F.2d 288 (5th Cir. 1969); United States v. Rehfield, 416 F.2d 273 (9th Cir. 1969), cert. denied, 397 U.S. 996, 90 S.Ct. 1137, 25 L.Ed.2d 405, reh. denied, 397 U.S. 1081, 90 S.Ct. 1526, 25 L.Ed.2d 820 (1970); United States v. Dancis, 406 F.2d 729 (2d Cir.), cert. denied, 394 U.S. 1019, 89 S.Ct. 1640, 23 L.Ed.2d 44 (1969); Johnson v. United States, 374 F.2d 966 (4th Cir. 1967); Brisco v. United States, 368 F.2d 214 (3d Cir. 1966); Kotz v. United States, 353 F.2d 312 (8th Cir. 1965); Rogers v. United States, 326 F.2d 56 (10th Cir. 1963); Standley v. United States, 318 F.2d 700 (9th Cir. 1963); Tatum v. United States, 114 U.S. App.D.C. 49, 310 F.2d 854 (1962); Carter v. United States, 113 U.S.App.D.C. 123, 306 F.2d 283 (1962); Cunningham v. United States, 256 F.2d 467 (5th Cir. 1958).

5. In Cunningham v. United States, 256 F.2d 467, 473 (5th Cir. 1958), the court said:

While appellant does not here invoke, as indeed he cannot, the equal protection clause of the Fourteenth Amendment, against the classification of which he complains, it has been definitely settled . . . that classifications of the general nature of that involved here are not invalid. . . . [W]hile arbitrary or unreasonable classifications may not be set up, there must be differences in character, condition or situation to justify the distinction; that the distinctions and differences in short must bear a due and proper relation to the classification; the equal protection of the laws is afforded if the law in question operates in the same general way on all who belong in the same class. For the same reasons it will not avail appellant under this record to claim under Bolling v. Sharpe

S.Ct. 693, 98 L.Ed. 884 (1954); Cunningham v. United States, 256 F.2d 467, 473 (5th Cir. 1958). Moreover, the distinction between youthful offenders and adults embodied in all such statutes rests on a basis which is certainly rational,[6] namely, that, given special treatment, persons in their formative years are more amenable to rehabilitation than are adults.[7] Hence, on its face, the statute does not violate the equal protection clause and no substantial constitutional question is raised on that count.

We turn to the question of whether the claim that the statute as applied violates the equal protection clause raises a substantial constitutional question. Since plaintiffs allege, as they must to justify the convening of a three-judge court, that the statute is unconstitutional not merely as applied to them individually but as applied to all persons similarly situated, it is necessary before deciding the merits of this count to ascertain whether a class action determination is appropriate.

■ There is no doubt that this is a valid class action. The sole difficulty presented by such a determination is ascertaining the membership of the class. Article 75 of the Penal Law is chal-

. . . that the due process secured by the Fifth Amendment has been in any way denied him.

6. Plaintiffs err in contending that discrimination between "young adults" and adults as to reformatory sentences and denial of good time can only be upheld if the state can put forward a compelling interest to justify it. The provisions before us do not involve invidious classifications, such as race or wealth; nor do they burden specifically protected areas of the Bill of Rights so as to invoke this higher standard. Unlike other rights, such as the right to vote (Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966)), or the right to travel (Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)), the right to liberty has not been treated as so fundamental as to require the application of the compelling interest test. In Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), a case involving discrimination between convicts and non-convicts in commitment to a mental institution, the court by implication accepted the rational basis test and struck down the distinction only because there was "no conceivable basis" for applying it. Id. at 111, 86 S.Ct. at 760. In Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), the Court upheld a statute which permitted criminal convictions and hence deprivation of liberty based on less than unanimous verdicts, because "the Louisiana statutory scheme serves a rational purpose". Id. at 363, 92 S.Ct. at 1625. In Royster v. McGinnis, 332 F.Supp. 973 (S.D.N.Y.1971) (three-judge court), prob. juris. noted, 405 U.S. 986, 92 S.Ct. 1247, 31 L.Ed.2d 452 (1972), a case

challenging deprivation of good time, the court said: "[T]he real question, and indeed the only question, before the court is whether a rational basis exists for the distinction made . . . between jail and non-jail defendants in the awarding of good time credit." Id. 332 F.Supp. at 977. The court was unanimous on this point. Id. at 981. Since the above cases involve deprivation of liberty and apply the rational basis test, we feel constrained to apply the same test here, notwithstanding Bolling v. Manson, 345 F.Supp. 48 (D.Conn.1972) (three-judge court), which held that where liberty is involved the state must show a compelling interest. Id. at 51. Accordingly, the statutory scheme must not be disturbed if the defendants can show a rational basis for the classification on which it relies.

7. In the case of In re Herrera, 23 Cal.2d 206, 143 P.2d 345 (Sup.Ct.1943) Justice Traynor analyzed the rationale behind special sentencing procedures for youthful offenders:

Petitioners contend that an unreasonable classification results from the provision that any offender who is less than 23 years of age at the time he is apprehended may be committed to the [Youth Correction] Authority. · There are convincing reasons, however, for such a classification. The great value in the treatment of youthful offenders lies in its timeliness in striking at the roots of recidivism. Reaching the offender during his formative years, it can be an impressive bulwark against the confirmed criminality that defies rehabilitation, for it is characteristic of youth to be responsive to good influence as it is susceptible to bad. 143 P.2d at 348.

lenged, here, as an unjustifiable imposition of a longer sentence on juveniles than the maximum which can be imposed on adults for the same crime. Since the contested four year maximum provided for by Article 75 is no greater than the permissible maximum term for all felonies (N.Y.Penal Law § 70.00(2)), it follows that only misdemeanants face longer imprisonment by virtue of the reformatory alternative. Accordingly, the class challenging the constitutionality of this statute consists solely of reformatory-sentenced misdemeanants.

Neither party has indicated an exact figure as to the number of members comprising this class and, indeed, such a figure might well be impossible to arrive at since the membership of the class is in a state of constant flux. However, some indication of the size of the class is given by the letter of R. Van Hoesen, Correctional Clerk at Coxsackie Correctional Facility, attached to the affidavit of Walter Dunbar, Executive Deputy Commissioner of the New York State Department of Correctional Services (in opposition to plaintiffs' motion), which states that as of April 28th, 1972, inmates serving reformatory sentences at Coxsackie numbered 227 youthful offenders (some of whom are certainly misdemeanants) and 103 misdemeanants. This is only one of a number of institutions throughout the state in which reformatory-sentenced inmates are confined. A class of this size is clearly sufficiently numerous that joinder of all members is impracticable. Korn v. Franchard Corp., 456 F.2d 1206, 1209 (2d Cir. 1972).

The constitutionality of the provisions under which members of the proposed class were sentenced is a question of law common to all. Moreover, although all the named plaintiffs are female and all are confined at Bedford Hills Correctional Facility, there is no reason why they cannot represent the interests of male inmates or inmates at other institutions who are sentenced under §§ 75.-00 and 75.10, subd. 1. Plaintiffs are represented by conscientious counsel who are experienced in this area of the law and, accordingly, we believe that plaintiffs will adequately represent the interests of the members of the class. Finally, (Rule 23(b)(2)) the state has acted on grounds which are generally applicable to the class, making appropriate injunctive or declaratory relief with respect to the class as a whole.

Turning to the merits, we believe that, subject to the qualifications stated below, plaintiffs' contention that the statute as applied to the class which they represent violates the equal protection clause may present a substantial constitutional question requiring the convening of a three-judge court. Indisputably, the rational basis which sustains the discrimination between "young adults" and adults in the Penal Law is the same as that which underlies the federal statute, namely, the amenability of young offenders to rehabilitation through special treatment.[8] As the Court of Appeals for the District of Columbia has said, "the basic theory of that Act [the Youth Corrections Act] is rehabilitative and in a sense this rehabilitation may be regarded as comprising the *quid pro quo* for a longer confinement but under different conditions and terms than a defendant would undergo in an ordinary prison." Carter v. United States, 113 U.S.App.D.C. 123, 306 F.2d 283, 285 (1962). Although it may not be constitutionally required that the state provide separate facilities for reformatory sentenced inmates, the very rationale for finding that the statute is constitutional on its face requires that its application afford those subject to it

---

8. *See, e. g.,* United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d 722, 724 (1970); Rogers v. United States, 326 F.2d 56, 57 (10th Cir. 1963); Carter v. United States, 113 U.S.App.D.C. 123, 306 F.2d 283, 285 (D.C.Cir. 1962); Cunningham v. United States, 256 F.2d 467, 471–472 (5th Cir. 1958). See also In Re Herrera, 23 Cal.2d 206, 143 P.2d 345 (1943).

a meaningful program of rehabilitation.[9] Plaintiffs allege that they have received "no significant vocational, education or moral guidance but instead [have] been subjected to a debasing and criminalizing environment". Complaint, Par. 8(A)(1). On information and belief (without the benefit of discovery), they allege that the same facts are true of the other institutions in which reformatory sentenced inmates are confined. Complaint, Par. 8(D). Accordingly, their position is "that none of the possible justifications for a reformatory sentence are in fact realized, but instead recidivism and criminality are increased." Complaint, Par. 9(g).

If plaintiffs' allegations can be substantiated, they would raise a substantial question as to the constitutionality of this statute.[10] Thus, it is apparent that the very existence of the prerequisite for the convening of a three-judge court turns almost entirely on facts which are not at our disposal. Accordingly, a hearing is necessary to determine whether plaintiffs can make at least a threshold showing that, on a statewide basis, persons in the plaintiff class are not afforded a program of rehabilitation.

Finally, we reach plaintiffs' contention that "[i]t is a denial of due process

9. Discussing a habeas corpus petition questioning the constitutionality of the statute's application in an individual case, the Appellate Division of the State of New York has said:

> The ability to benefit from, and the availability of, rehabilitation facilities and treatment form a rational basis for distinguishing between persons convicted of the same offense, so as to subject one to a potentially greater period of confinement. . . .
>
>    *    *    *    *    `    *
>
> However, it is precisely the rationale for finding no deprivation of equal protection to those given reformatory sentences that requires the granting of habeas corpus relief herein. Whereas the provision for reformatory sentences is constitutional, . . . the [statute] may not . . . operate to confine a reformatory term inmate for a period greater than the maximum to which a prison term inmate convicted of the same crime is subject, unless the basis for distinguishing between the two persons continues to exist.
>
>    *    *    *    *    *
>
> The evidence here is that the relator is not receiving the benefits of rehabilitation facilities and his treatment is indistinguishable from those with prison terms. A holding that equal protection is not violated by such confinement beyond the maximum for a prison sentence for the same offense would be inherently inconsistent—the constitutionality of the relator's reformatory sentence is sustained, in theory, on the ground that rehabilitation is a rational basis for distinguishing between persons convicted of the same offense,

while, in operation, . . . no rational basis for distinction now exists. People ex rel. Meltsner v. Follette, 32 App.Div.2d 389, 390–391, 302 N.Y.S.2d 624, 626–627 (2d Dept. 1969).

10. Defendants' contention that an attack on a statute as applied must be determined by a single judge is without merit. The very cases which they cite establish the contrary proposition. In Ex Parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 951, 84 L.Ed. 1249 (1940), for example, the court stated:

> It is necessary to distinguish between a petition for injunction on the ground of the unconstitutionality of a statute as applied, which requires a three-judge court, and a petition which seeks an injunction on the ground of the unconstitutionality of the result obtained by the use of a statute which is not attacked as unconstitutional. The latter petition does not require a three-judge court. In such a case the attack is aimed at an allegedly erroneous administrative action. (Footnotes omitted.)

Applying this standard, the Court of Appeals for this Circuit, has held:

> The distinction appears to be between acts the state statute permits (but does not necessarily require), and actions taken in reliance on, but in excess of, the State statute's authority. Astro Cinema Corp., Inc. v. Mackell, 422 F.2d 293, 297 (2d Cir. 1970).

Plaintiffs' claim falling in the former category, it is clear that a three-judge court would be required if plaintiffs demonstrate state-wide application.

to impose such enhanced sentences without a separate hearing under articulated standards on both the need and avilability [sic] of such specialized treatment." Memorandum in Support of Application for a Preliminary Injunction and Convocation of a Three-Judge Court, at 8.

■ Plaintiffs' argument that the statute allows the sentencing judge excessive discretion is without merit. As the Court of Appeals for this court has stated in Smith v. Follette, 445 F.2d 955 (2d Cir. 1971):

> A sentencing judge . . . has always been afforded broad discretion in determining sentence and the existence of this discretion has not been thought to present constitutional difficulties. See United States v. Rosenberg, 195 F.2d 583, 604 (2d Cir.), cert. denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652 (1952). If it is "impossible to say that committing to the untramelled discretion of the jury the power to pronounce life or death in capital cases is offensive to anything in the Constitution," as the Supreme Court has recently held [McGautha v. California, 402 U.S. 183, 207, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971)], the Due Process Clause is not violated by permitting a trial judge to exercise his discretion, albeit without specific standards to guide him, to provide hopefully rehabilitative medical treatment to felons he finds likely to benefit by this type of sentence and not to others. 445 F.2d at 960–961 (footnote omitted).

■ Nor does the claim that imposition of a reformatory sentence requires a separate determination raise a substantial constitutional question. While there is some authority to support this position,[11] we feel that the question is foreclosed by McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), in which the Court held that a separate penalty hearing was not required to enable a jury to impose the death penalty. Although the case before us differs from *McGautha* in that the penalty is judge-imposed, we see no reason why this distinction alone should require a bifurcated procedure. On the contrary, since a New York judge before

11. In the case of In re Wilson, 438 Pa. 425, 264 A.2d 614 (1970), the Supreme Court of Pennsylvania held that a juvenile can be sentenced to a longer commitment as a delinquent only if the juvenile has notice at the commencement of the proceedings against him of the fact that the state intends to seek to have him adjudicated a delinquent and on what facts it will base its request. Furthermore, the conclusion on which the ultimate finding of delinquency relies must be set forth in the record. 264 A.2d at 618. *See also* Preliminary Report of the Governor's Special Committee on Criminal Offenders, which persuasively advocates the necessity of a hearing:

> The authorized sanction for criminal conduct should be based upon the gravity of the conduct, and not upon the condition of the offender. Moreover, even if the reformatory term could be justified on the basis of the condition of the offender—as some sort of special exception in dealing with youngsters— the present statute does not even require proof of any condition. Under the present setup the misdemeanant between the ages of sixteen and twenty-one is not even entitled to the legal protection accorded juvenile delinquents and PINS; *i. e.*, a dispositional hearing in which the question of whether he requires "supervision, treatment, or confinement" can be litigated. The reason he is not accorded such protection is that the sentence is a criminal sanction, rather than a civil commitment. And, as such, it should be proportioned to the conduct.

> If we wish to have a reformatory sentence, based in part upon criminal conduct, and in part upon the theory that the State has the right to exercise special custody rights over youth who are in need of "education, moral guidance and vocational training," then any youth to be subjected to such special custody should, at least, have the same protection we accord others who are subjected to such special custody (*e. g.*, the juvenile delinquent, PINS, narcotic addict, mentally ill, etc.). He should have a hearing to determine whether he, in fact, needs supervision, treatment or confinement for a period beyond that which is justified by the gravity of his crime. *Id.* at 147.

imposing a reformatory sentence on a misdemeanant has the benefit of a pre-sentence report [12] and any statements which the defendant and his attorney wish to make in his behalf,[13] a separate hearing on sentencing appears less. necessary here than in *McGautha.*

II. *New York Correction Law Sections 803 and 804.*

We turn to the issue of whether the challenge to New York Correction Law Sections 803 and 804 raises a substantial constitutional question.[14] . These provisions make persons sentenced to indeterminate and definite terms eligible for conditional release. By omitting reformatory sentences, they operate to deprive persons subject to such sentences of the benefit of good behavior allowances which are accorded other inmates.

■ Initially, we must decide whether a class action determination is proper. There is no doubt that it is. The class of persons adversely affected by this statute is larger than that discussed above since it would include reformatory sentenced felons as well as misdemeanants. The class is, therefore, clearly too numerous to permit joinder. The constitutionality of the statute is a question of law common to all. Although all the named plaintiffs are misdemeanants, their claims are typical of the claims of all, including felons, and they will, as we have stated above, fairly and adequately represent the interests of the entire class. Moreover, the party opposing the class has acted on grounds applicable to all and declaratory or injunctive relief would be appropriate with respect to the class as a whole.

We turn to the merits of this count. Defendants' position is that the reformatory sentence and denial of good time are two sides of the same coin, the purpose of both being the creation of the flexible program designed to rehabilitate those who appear susceptible to treatment. Thus, the legislature has ordained a longer maximum term and made release before the end of the term conditioned on *successful* participation in rehabilitative programs (parole), rather than willingness to participate in them (good behavior allowance).

Without deciding, now, whether the legislative scheme rests on constitutionally acceptable premises, it is at least clear that, if in practice it confines youthful inmates longer than adults without actually offering them a program of rehabilitation, its operation would raise a serious constitutional question. In Bolling v. Manson, 345 F. Supp. 48 (D.Conn., 1972) (three-judge court), the court held that depriving juveniles and women sentenced to indefinite terms of good time credit deprived them of equal protection because "[s]ince . . . the state has made no distinction in conditions of confinement based on ·the nature of an inmate's sentence, there is no basis in fact, much less a compelling state interest grounded in different treatment methods, behind the challenged discrepancy in good time." *Id.* at 51. *See also* Royster v. McGinnis, 332 F.Supp. 973 (S.D.N.Y.1971) (three-judge court), prob. juris. noted, 405 U.S. 986, 92 S.Ct. 1247, 31 L.Ed.2d 452 (1972).

Plaintiffs allege facts which appear identical to those underlying the decision in *Bolling*; this, alone, would normally entitle them to have their case heard directly by a three-judge court. However, given the interrelated nature of the two statutes under consideration and of the facts on which the constitutional challenge to each depends, we believe that, since a hearing is necessary as to the sentencing provisions, the better course would be to await the outcome

---

12. McKinney's Consolidated Laws of New York, Book 11–A, Criminal Procedure Law § 390.20(2)(b) (1971).

13. McKinney's Consolidated Laws of New York, Book 11–A, Criminal Procedure Law § 380.50 (1971).

14. This challenge is properly brought pursuant to the Civil Rights Act, rather than the Habeas Corpus Act. Royster v. McGinnis, 332 F.Supp. 973, 976 (S.D. N.Y.1971) (three-judge court), prob. juris. noted, 405 U.S. 986, 92 S.Ct. 1247, 31 L.Ed.2d 452 (1972).

**532**

of the hearing before convening a three-judge court as to either statute.

Accordingly, we reserve decision as to plaintiffs' motion to convene a three-judge court until after the evidentiary hearing discussed above. Decision on defendants' motion to dismiss the complaint must also await the outcome of the hearing. Plaintiffs' motion for a class action determination is granted. The class challenging Sections 75.00 and 75.10, subd. 1 of the Penal Law will consist of all misdemeanants serving reformatory sentences, while the class challenging Sections 803 and 804 of the Correction Law will include all reformatory sentenced inmates, felons and misdemeanants alike. Defendants' motion to quash plaintiffs' interrogatories and requests for admissions is denied; since we have held that this action is a class action attacking the statute as applied, it is clear that the interrogatories and requested admissions are relevant. Defendants are allowed ten days from service of the order denying this motion to serve answers to the interrogatories and requests for admissions.

Submit order.