**Lois SERO et al., Plaintiffs,**

**v.**

**Russell G. OSWALD, Commissioner of Correctional Services, et al., Defendants.**

**No. 72 Civ. 778.**

United States District Court, S. D. New York.

Feb. 27, 1973.

Herman Schwartz, Edward I. Koren, New York Civil Liberties Union, Buffalo, N. Y., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., State of New York, New York City, for defendants; Michael Colodner, Asst. Atty. Gen., of counsel.

## MEMORANDUM

LASKER, District Judge.

On October 25, 1972, we denied plaintiffs' motion to convene a three-judge court to consider the constitutionality on their face of Sections 75.00 and 75.10, subd. 1 of the New York Penal Law (McKinney's Consol.Laws, c. 40, 1967), because we felt prior decisions of higher courts foreclosed granting the requested relief. Plaintiffs move for reconsideration of this decision [1] in light of Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

In *Goosby*, the Supreme Court clarified the meaning of the substantiality prerequisite to the convening of a three-judge court:

> "Section 28 U.S.C. § 2281 does not require the convening of a three-judge court when the constitutional attack upon the state statutes is insubstantial. 'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512 (1962), 'wholly insubstantial,' *ibid*, 'obviously frivolous,' Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910), 'obviously without merit,' Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4–5, 78 L.Ed. 152 (1933). The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon

1. The decision, reported at 351 F.Supp. 522, was implemented by two orders dated November 8, 1972.

the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions which merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281." at 518, 93 S.Ct. at 858.

In light of the *Goosby* language and holding,[2] there is no doubt, as a brief analysis will show, that reconsideration of our prior decision is necessary, and that the issues previously held to be foreclosed should be submitted to the three-judge court convened pursuant to the earlier decision to consider plaintiffs' challenge to New York Correction Law, McKinney's Consol.Laws, c. 43, Sections 803 and 804.

■ Our opinion found the substantive attack on the statute to be foreclosed because of the many cases, including one from this Circuit,[3] upholding the constitutionality of the Federal Youth Corrections Act (18 U.S.C. § 5005 et seq.), which permits a judge to sentence a youth offender[4] to an indeterminate term with conditional release after four years and unconditional release after six years (*id.* at §§ 5010(b), 5017(c)), even though adult offenders are subject to a shorter maximum sentence. The aim of both the New York and the federal statutes is the same: rehabilitation of offenders during their formative years through a flexible but, if necessary, lengthy term of incarceration. *Compare* Carter v. United States, 113 U.S.App. D.C. 123, 306 F.2d 283, 285 (1962) *with* People ex rel. Meltsner v. Follette, 32 A. D.2d 389, 390–391, 302 N.Y.S.2d 624, 626–627 (2d Dept. 1969). The cases

leave no doubt that the use of lengthier sentences for young persons does not *per se* violate the Constitution.[5]

Nevertheless, we do not think "prior decisions *inescapably* render the claims *frivolous*." *Goosby*, at 518, 93 S.Ct. at 859 (emphasis added). No decision of a higher federal court has upheld the particular provisions challenged here. Moreover, the analogous federal statute differs from New York's provisions in one respect which in the light of *Goosby* may be considered material.

The Federal Youth Corrections Act provides:

> "Committed youth offenders not conditionally released shall undergo treatment in institutions of maximum security, medium security, or minimum security types, including training schools, hospitals, farms, forestry and other camps, and other agencies that will provide the essential varieties of treatment. . . . Insofar as practical, such institutions and agencies shall be used only for treatment of committed youth offenders, and such youth offenders shall be segregated from other offenders, and classes of committed youth offenders shall be segregated according to their needs for treatment." 18 U.S.C. § 5011.

The New York statute contains no such provision and has been interpreted not to require confinement of young adults in institutions separate from adult convicts. *Meltsner, supra.* Moreover, plaintiffs claim, and defendants do not deny, that reformatory-sentenced inmates are in practice intermingled with adult offenders and non-reformatory sentenced young adult offenders. The complaint further alleges that reformatory-sentenc-

---

2. In *Goosby* the Court held that a substantial constitutional question was presented by plaintiffs' attack on a statute which expressly prohibited persons confined in penal institutions from voting by absentee ballot, despite its earlier decision that denying pre-trial detainees absentee ballots because they were not included among persons specifically permitted to vote by absentee ballot was unconstitutional.

3. United States v. Dancis, 406 F.2d 729 (2d Cir.), cert. denied, 394 U.S. 1019, 89 S.Ct. 1640, 23 L.Ed.2d 44 (1969).

4. A youth offender is defined as "a person under the age of twenty-two years at the time of conviction." 18 U.S.C. § 5006(e).

5. See cases cited in *Sero*, 351 F.Supp. at 526, n. 4.

ed inmates are treated identically with other inmates and receive no treatment which can realistically be expected to promote their rehabilitation.

■ ■ We do not now decide, or imply, that segregation or different treatment of reformatory sentenced inmates is constitutionally mandated.[6] However, there is no question that meaningful efforts at rehabilitation *are* required to justify imposition of a longer sentence for young adults than adults; "the basic theory . . . is rehabilitative and in a sense this rehabilitation may be regarded as the *quid pro quo* for a longer confinement but under different conditions and terms than a defendant would undergo in an ordinary prison." Carter v. United States, 113 U.S.App.D.C. 123, 306 F.2d 283, 285 (1962). The federal statute *on its face* requires treatment; the New York statute does not. This fact alone differentiates them and, following *Goosby*, requires submission of the latter to the three-judge court, despite cases upholding the former.

■ We turn to the question whether imposition of reformatory sentences without a prior hearing on "reformability" denies sentenced persons due process of law. Counsel's able brief supporting an affirmative answer convincingly demonstrates that this issue, also, raises a substantial constitutional question under the applicable standard clarified in *Goosby*, and may do so even under the more rigorous approach followed in our earlier decision.

Although we recognized, at that time, the existence of some authority for plaintiffs' contention that a pre-sentence hearing is required by due process,[7] we felt constrained to hold that cases emphasizing the broad discretion accorded sentencing judges foreclosed the issue. *See, e. g.,* McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971);[8] Smith v. Follette, 445 F.2d 955 (2d Cir. 1971); United States v. Rosenberg, 195 F.2d 583 (2d Cir.), cert. denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 2d 652 (1952). We are now persuaded that the distinction between imposing sentence solely as a penalty and sentencing as a penalty coupled with an implicit finding of reformability is such that earlier holdings do not foreclose plaintiffs' constitutional challenge. As suggested by the Preliminary Report of the [New York State] Governor's Special Committee on Criminal Offenders (June 1968), if incarceration represents a penalty only, then, "[t]he authorized sanction for criminal conduct should be based upon the gravity of the conduct, and not upon the condition of the offender" and should carry the same maximum for all, regardless of age. *Id.* at 147.

Furthermore, Humphrey v. Cady, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), relied on by plaintiffs to support their due process argument, also raises a serious question whether the reformatory sentencing procedure violates the equal protection clause. In *Humphrey*, petitioner was committed to a sexual deviate facility for treatment

---

6. See In re Brown, No. 17,997 (3d Cir., July 10, 1970), 7 Cr.L.Rpt. 2378, which implies that different treatment of juveniles may be required to justify longer confinement. Slip op. at 9, 7 Cr.L.Rpt. at 2378.

7. Plaintiffs contended before, and argue again that In re Brown, *supra*, supports their position and requires a hearing before imposition of a reformatory sentence. We remain convinced that the case does not stand for that proposition. Although the court expressed distaste with sentences for juveniles greatly in excess of those given adults and required the Dis-

trict Court to justify imposition of a longer sentence by "explicit findings and conclusions" (slip op. at 9, 7 Cr.L.Rpt. at 2378), we do not understand this requirement necessarily to mandate a separate evidentiary hearing, but merely that the judge made known the facts in the record and the presentence report upon which he is relying.

8. There is some question as to the extent to which *McGautha* has been undercut by the Court's decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

in lieu of sentence following a criminal conviction. He was not afforded a jury determination prior to commitment, although such a procedure was provided persons committed under the Mental Health Act. He claimed that denial of the procedural protection accorded the latter deprived him of equal protection. The Court found his claim substantial enough to require holding an evidentiary hearing on his petition for a writ of habeas corpus, even though Humphrey's commitment, unlike that of persons committed under the Mental Health Act, flowed from a criminal conviction. The Court said:

> "Respondent seeks to justify the discrimination on the ground that commitment under the Sex Crimes Act is triggered by a criminal conviction; that such commitment is merely an alternative to penal sentencing; and consequently that it does not require the same procedural safeguards afforded in a civil commitment proceeding. That argument arguably has force with respect to an initial commitment under the Sex Crimes Act, which is imposed in lieu of sentence, *and is limited in duration to the maximum permissible sentence.* The argument can carry little weight, however, with respect to the subsequent renewal proceedings, which result in five year commitment orders . . . *in no way limited by the nature of the defendant's crime or the maximum sentence authorized for that crime.*" 405 U.S. at 510–511, 92 S.Ct. at 1052 (emphasis added).

There are significant parallels between the situation in *Humphrey* and the case at hand. As noted by the Preliminary Report of the Governor's Special Committee on Criminal Offenders:

> "Under the present setup the misdemeanant between the ages of sixteen and twenty-one is not even entitled to the legal protection accorded juvenile delinquents and PINS; *i. e.,* a dispositional hearing in which the question of whether he requires 'supervision, treatment, or confinement' can be liti-

gated. The reason he is not accorded such protection is that the sentence is a criminal sanction, rather than a civil commitment. And, as such, it should be proportioned to the conduct." *Id.* at 147.

In light of *Humphrey*, the sentencing procedure involved here raises substantial equal protection problems, which were not previously considered by this court. They warrant submitting this aspect of the case to the already convened three-judge court.

Accordingly, the motion for reconsideration is granted and our prior decision and order are modified to provide that plaintiffs' challenge to New York Penal Law, Sections 75.00 and 75.10, subd. 1, as unconstitutional on their face as violating substantive and procedural due process and the equal protection clause will be submitted to the three-judge court previously convened to consider New York Correction Law, Sections 803 and 804.

It is so ordered.