UNITED STATES ex rel. Lois SERO et al., Petitioners,

v.

Peter PREISER, Commissioner of the New York Department of Correctional Services, et al., Respondents.

No. 72 Civ. 778.

United States District Court, S. D. New York.

June 26, 1974.

---

Herman Schwartz, Edward I. Koren, New York Civil Liberties Union, National Prison Project—American Civil Liberties Union, Amherst, N. Y., Elizabeth B. DuBois, Legal Action Center of the City of New York, Inc., New York City, for petitioners.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for respondents; Ralph L. McMurry, Asst. Atty. Gen., of counsel.

## MEMORANDUM

LASKER, District Judge.

The continuous procession of motions in this action which challenges the constitutionality of Article 75.00 of the Penal Law of New York is now augmented by petitioners' alternative motions for full or partial summary judgment. The vicissitudes of the case have called upon us before this to write a textbook's worth of opinions on various facets and issues.[1] It is unnecessary at this writing to review the facts, or to redefine the legal parameters of the proceeding, all of which are exhaustively—and somewhat exhaustingly—expounded in the earlier decisions.

Petitioners presently ask us to grant either 1) full summary judgment declaring that Article 75 is unconstitutional as applied or, in the event that application is denied, 2) partial summary judgment ordering that each member of the petitioning class be resentenced at a hearing, augmented by findings as to his or her reformability and, if an Article 75.-00 sentence is imposed, a statement of reasons for its imposition.[2]

The first leg of the motion stands on the claim that the undisputed facts establish that the statute as applied does not afford petitioners the special rehabilitative treatment which is the *quid pro quo* for the extended term which it authorizes. We have ruled in earlier opinions in this case that if such allegations were proven the statute would indeed be unconstitutional as applied.[3]

Petitioners' rationale is based on a statement contained in a Memorandum of February 4, 1974, submitted by the New York State Department of Correctional Services in relation to Assembly Bill 9375 providing for the repeal of Article 75. That bill has now become law, and Article 75 has been repealed, but prospectively only, so that petitioners' attack on the validity of the statute is not moot as to them. In its Memorandum, which supported the bill to repeal Article 75, the Department commented:

> "This bill is a logical culmination of the restructuring of the State correctional system which was commenced by the legislature in 1970 when it created the Department of Correctional Services and abolished the distinction between reformatories and State prisons.

1. 351 F.Supp. 522 (D.C.1972); 355 F.Supp. 1231 (D.C.1973); 372 F.Supp. 660 (D.C. 1974); 372 F.Supp. 663 (D.C.1974).

2. An additional aspect of the motion, that §§ 803 and 804 of the New York Correction Law be declared unconstitutional insofar as they fail to provide petitioners time off for good behavior even though petitioners (reformatory-sentenced inmates) are not otherwise treated differently from other inmates who are allowed such time off, has been rendered moot by the enactment of Chapters 652 and 653 of the 1974 Session Laws which together retroactively grant such time off to persons in the petitioning class.

3. 351 F.Supp. 522, 528 (1972); 372 F.Supp. 663, 670 (1974).

As provided by the 1970 legislation, Article 4 of the Correction Law mandates that every institution operated by the Department of Correctional Services for the confinement of inmates (except institutions for the mentally ill or mentally defective) shall be a correctional facility maintained for the purpose of providing places of confinement and treatment with the objective of assisting inmates to live as law-abiding citizens. Correctional facilities are classified by functions, such as residential treatment facilities, general confinement facilities and work release facilities. Individuals, regardless of the type of sentence they are serving, are confined in institutions best suited to their needs. For purposes of confinement, treatment, education and vocational training, persons serving reformatory or indeterminate sentences are treated in accordance with rehabilitative goals rather than the type of sentence they are serving. Since reformatories as well as the special purposes they historically served no longer exist, there is no longer a need for reformatory sentences.

Moreover, the sentence is unfair in that it treats young adults (persons 16 to 21) more harshly than adults."

Petitioners argue as to this passage that:

"[T]he Department's admission in the Department's legislative Memorandum accompanying A. 9375 that separate treatment can no longer exist in New York makes it clear that there is no more purpose to the reformatory sentence, no matter where served. It is for this reason that Article 75 has been repealed.

The rationale for this repeal is not limited just to reformatory sentences that are imposed after the effective date of the Act. The rationale is based on a fundamental decision about correctional methods made back in 1970, which 'abolished the distinction between state prisons and reformatories.' That decision made it irrational and inappropriate to impose reformatory sentences not only on people sentenced after the enactment of this repeal legislation, but on all sentences imposed and being served after 1970." Memorandum at 2–3.

From this analysis petitioners conclude that the defendants have now admitted away the case, that is, have admitted the key allegation of the complaint[4] contained in Paragraph 9(a) that the authorization of "one-to four year reformatory sentences for offenders, like petitioners, which would ordinarily result in a one-year maximum (and usually less) for persons over 21 . . . are unconstitutional," because they treat "such persons [i. e. petitioners] worse that they treat persons over 21 who commit the same offense, for no compelling or even rational basis."

In judging the soundness of this argument, we return to first principles, that is, to the circumstances which we and other courts have found must exist to justify the constitutionality of imposing a substantially longer ("extended") sentence on a young adult offender than on an adult who commits the same crime.

In the earliest of our opinions in the case we wrote:

"[T]he rational basis which sustains the discrimination between 'young adults' and adults in the Penal Law is the same as that which underlies the federal statute, namely, the amenability of young offenders to rehabilitation through special treatment." 351 F.Supp. at 528 (footnote omitted).

We then quoted Chief Justice (then Judge) Burger's opinion in Carter v. United States, 113 U.S.App.D.C. 123, 306 F.2d 283, 285 (1962) that "the basic theory of that Act [the Federal Youth Corrections Act, the constitutionality of

4. Petitioners' memorandum does not specify which allegations of the complaint are claimed to have been admitted, but those contained in Paragraph 9(a) appear to be in point.

which the parties here agree is premised on the same rationale as New York's statute] is rehabilitative and in a sense this rehabilitation may be regarded as comprising the *quid pro quo* for a longer confinement *but under different conditions and terms than a defendant would undergo in an ordinary prison*" (Emphasis added).

We did not, in our earlier opinion, dwell on the requirement that, in addition to rehabilitative treatment, a young adult was entitled to be held in custody, as *Carter* specified, "under different conditions and terms than a defendant would undergo in an ordinary prison," because the issue upon which the parties focused at that opening stage of the litigation was whether petitioners were being accorded rehabilitative treatment at all. The factual context of the case has changed, however, and the question is now squarely presented whether petitioners are entitled, not only to a rehabilitative program, but also to be held in custody "under different conditions and terms than a defendant would undergo in an ordinary prison." The changes in the factual context consist first, of the admissions by respondents[5] that the conditions under which petitioners are being held are *no different* from those - which the ordinary prisoner undergoes, evidence as to a critical matter which had not been developed at the time of our earlier opinion, and second, of the Commissioner of Corrections' statement in the Memorandum, cited above, supporting Assembly Bill 9375 that "[s]ince reformatories, *as well as the purposes they historically served* no longer exist,

there is no longer a need for reformatory sentences" (emphasis added).

We believe that this forceful and unconditional assertion by the highest correctional authority in the state must be regarded as admitting that, in the context of the state's present framework of penal institutions—in which *both* persons serving reformatory sentences (the petitioner class) and those serving indeterminate sentences (adults) "are treated in accordance with rehabilitative goals rather than the type of sentence they are serving"—there is no longer any justification for imposing a substantially longer sentence on the petitioner class than on adult offenders convicted of committing the same crimes.

■ It is no answer to say, as respondents assert, that if young adults are more amenable to rehabilitation than adults, the state may impose extended sentences on the former group to assure their rehabilitation. Putting aside that the premise of a young adult's greater susceptibility to rehabilitation is in issue in this case, we find it more reasonable to conclude that if indeed young adults *are* more amenable to rehabilitation than their elders, the result should be that their sentences—if they vary from that of adults—ought to be shorter (where the programs offered to each class are the same, as they now are in New York) rather than longer. The state's argument that it is justified in holding young adults in custody longer because they are *more* amenable to rehabilitation than older prisoners is of a piece with that offered and rejected in Gesicki v. Oswald, 336 F.Supp. 371 (S.

---

5. We list, as illustrative, the following admissions. There are no longer any institutions in the Department of Corrections which are designated as reformatories. Answer, March 12, 1974, to Amended Petition, p. 8, par. 7c. Persons sentenced to both reformatory sentences and indeterminate felony sentences are confined in all of the State's correctional facilities. Answer, June 22, 1972, to petitioners' Interrogatories, par. 1, 2a. In these facilities, reformatory-sentenced inmates are commingled at work, recreation, in sleeping quarters and in the mess hall. Answers to petitioners' Requests for Admissions, par. 2. The petitioners' class members are not provided separate recreational facilities (Answers, March 22, 1973, to petitioners Supplemental Interrogatories, par. 8), educational programs (*id.*, par. 22), vocational, training, counselling, drug addiction, special rehabilitative or other programs (*id.*, par. 25). All inmates, regardless of the type of sentence they are serving are subject to the same rules and disciplinary sanctions (*id.*, par. 6a) and enjoy the same privileges (*id.*).

D.N.Y.1971) (three judge court), aff'd, 406 U.S. 913, 92 S.Ct. 1773, 32 L.Ed.2d 113 (1972). In *Gesicki,* which held the New York Wayward Minor Act to be void for vagueness, Chief Judge Kaufman disposed of the state's argument that its role as *parens patriae* justified the statute, observing that:

"This has been the reasoning relied upon by innumerable courts in the past to sustain the constitutionality of statutes regulating or 'protecting' juveniles by standards equally as vague and all-embracing as that before us. *See, e. g.,* State v. L. N., 109 N.J.Super. 278, 263 A.2d 150 (1970); People v. Deibert, 117 Cal.App.2d 410, 256 P. 2d 355 (1953). It is a rationale which has its roots deep in the history of this country's praiseworthy efforts to treat *troublesome* juveniles differently than adult criminals. *See* Ex parte Crouse, 4 Whart. 9 (Pa.1838) (commitment to house of detention for 'incorrigible conduct'). *See generally* Fox, Juvenile Justice Reform: An Historical Perspective, 22 Stan.L. Rev. 1187, 1198ff. (1970)." *Id.* at 376.

■ In sum we find that while imposition of extended sentences may meet the requirements of the Equal Protection clause, as we and earlier courts have held, when defendants so sentenced are differentially treated from other defendants, the command of the clause is violated when the sentence is longer but treatment and all other conditions of custody are the same. It would be a distortion of the equal protection clause to hold that it permits the imposition of an extended sentence on a young adult just because he or she is young.

Our conclusion that this is a sound analysis of the facts and issues now before us is strengthened by the views set forth by the New York Supreme Court in People ex rel. William Cromwell v. Warden, 74 Misc.2d 642, 345 N.Y.S.2d 381 (Bronx Co., June 13, 1973), construing the rights of reformatory sentenced defendants. There the court wrote:

"In all other respects relators stand on the same plane as those committed to the correctional institution. Although relators are accorded treatment appropriate to reformatory inmates, the testimony makes clear that the programs obtaining in C–90 and C–76 are substantially identical. Indeed, most are participated in jointly by both sets of prisoners. Where a program available at one institution is not available at the other, a counterpart is furnished. Although the law mandates that the minimum parole date be fixed earlier for those sentenced to reformatories, the standard applied in fixing those dates is the same. In short, the treatment accorded the reformatory inmate and the prisoner sentenced to an indefinite term is, in substance, identical.

It may well be that the distinction between the two had 'some rational basis' (McGinnis v. Royster, supra, [410 U.S. 263] p. 270, 93 S.Ct., 1055, 1059, [35 L.Ed.2d 282]) at a time when the concept of treatment was limited to reformatories only and when segregation of the young from the hardened recidivist was deemed essential to rehabilitation. However, the 1970 amendments to the Correction Law expanded the theory of treatment to include all prisoners beneath its umbrella; and, it is clear, from the record in this case as well as from other reported cases (People ex rel. Meltsner v. Follette [32 A.D.2d 389, 302 N.Y.S.2d 624], supra; People v. Jiminez [71 Misc.2d 867, 337 N.Y. S.2d 438], supra) that segregation of reformatory inmates is no longer the rule. Hence, the 'rational basis' which originally justified the disparity in treatment has been swept aside by the forward movement of the state's correctional policy." *Id.* 74 Misc.2d at 655, 345 N.Y.S.2d at 394–395.

■ The state's arguments *contra* are not persuasive, if it can be said that they meet the issue at all. We agree with its undeniable contention—refer-

ring to the fact that adults as well as young adult prisoners are now offered rehabilitation in the New York scheme —that "[t]here is no constitutional prohibition in the State wishing to attempt to rehabilitate as many people as it can." (Memorandum in Opposition at 22.)

However, it does not follow that because the state is constitutionally free to offer rehabilitation to all prisoners it is free to discriminate among prisoners convicted for the same crimes, housed in the same institutions and treated according to the same plan, by imposing substantially longer sentences only on those who are younger than 21.

■ We agree also with the state's assertion that courts have generally held that as long as a rehabilitative program is available, the place of incarceration does not raise a constitutional issue. But it is not the place of incarceration that we are exclusively, or even primarily concerned with. Rather it is the complex of conditions which results not only in a young adult being housed in the same institution, but being treated in *every other way* identically with his older fellow inmates. As the Commissioner's Memorandum itself advised the State Assembly, the result of this identity of housing and treatment is not only that there are no longer any reformatories in New York State but, what is critical, that "the special purposes they historically served no longer exist" and, consequently, "there is no longer a need for reformatory sentences."

Our conclusion that Article 75.00, under the present circumstances, violates constitutional requirements renders moot petitioners' alternative motion that, because no previous determination has been made as to whether they are in fact rehabilitable, they be resentenced.

Petitioners' motion for summary judgment declaring Article 75.00 invalid to the extent that it authorizes the imposition of extended sentences on members of the petitioner class is granted. The application for writs of habeas corpus for members of the petitioner class is granted, and the members of the class shall be discharged unconditionally from custody, except that, in the case of any member of the class who has not yet served a sentence no longer than could have been imposed upon him or her as an adult, he or she shall be discharged unless within thirty days hereof he or she is lawfully resentenced.

Submit order on notice.